659 So.2d 547 (1994)
Alvin HILL
v.
STATE of Mississippi.
No. 93-DP-00392.
Supreme Court of Mississippi.
December 21, 1994.
Opinion Denying Rehearing June 29, 1995.
*548 James W. Craig, Jane E. Tucker, Andre'de Gruy, Jackson, for appellant.
Michael C. Moore, Atty. Gen., Marvin L. White, Jr., Asst. Atty. Gen., Charlene R. Pierce, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
HAWKINS, Chief Justice, for the Court:
Alvin Hill was convicted of capital murder and sentenced to death by virtue of jury verdicts returned in the Circuit Court of DeSoto County on November 20 and 21, 1980, respectively.
Hill's conviction and sentence were affirmed by this Court on direct appeal in Hill v. State, 432 So.2d 427 (Miss. 1983), cert. denied 464 U.S. 977, 104 S.Ct. 414, 78 L.Ed.2d 352 (1983). Appeals by Hill have progressed through the state and federal courts in a post-conviction context since 1984. See In re Alvin Hill, 460 So.2d 792 (Miss. 1984); In re Alvin Hill, 467 So.2d 669 (Miss. 1985); Hill v. Thigpen, 667 F. Supp. 314 (N.D.Miss. 1987); Hill v. Black, 887 F.2d 513 (5th Cir.1989); Hill v. Black, 891 F.2d 89 (5th Cir.1989); Hill v. Black, 498 U.S. 801, 111 S.Ct. 28, 112 L.Ed.2d 6 (1990); Hill v. Black, 920 F.2d 249 (5th Cir.1990), and Hill v. Black, 932 F.2d 369 (5th Cir.1991).
On April 15, 1992, the Court of Appeals for the Fifth Circuit entered an order in Hill v. Lucas, Cause No. 87-4922, postponing any decision on Hill's second petition for rehearing and suggestion for rehearing en banc "pending Mississippi's resolution of Alvin Hill's now pending state court petition for post-conviction relief, No. 03-DP-23." At the present hour, Hill's third application for post-conviction relief is certainly ripe for decision.

A. SENTENCING PHASE
The dispositive point in question implicated in the sentencing phase is the one dealing with the "especially, heinous, atrocious or cruel" aggravating factor found in Miss. Code Ann. § 99-19-101(5)(h). This factor was submitted to the jury for consideration without the benefit of a limiting or definitional instruction.
Specifically, the sentencing jury in Hill's case was instructed that it could consider as an aggravating circumstance that "[t]he capital offense was especially heinous, atrocious or cruel." No limiting definition of this aggravator was communicated to the jury. Intervening decisions issued by the Supreme Court of the United States since Hill's trial for capital murder have demonstrated that this omission is error and potentially fatal to a sentence of death. Clemons v. Mississippi, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990); Maynard v. Cartwright, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988).
The posture of Hill's third and most recent motion for post-conviction relief is controlled by our recent decisions of Wilcher v. State, 635 So.2d 789 (Miss. 1993); Wiley v. State, *549 635 So.2d 802 (Miss. 1993); and Woodward v. State, 635 So.2d 805 (Miss. 1993). Our holding in this trilogy is viable precedent for vacating the judgment of death imposed against Hill and remanding this cause to the Circuit Court of DeSoto County for a new sentencing hearing.
Given the stance taken by a majority of justices voting in Wilcher, this Court has foreclosed the idea of reweighing aggravating versus mitigating factors or performing a harmless error analysis. Hill has successfully hurdled any statutory or case-created bars that might have precluded our consideration of this issue.
Our task in death penalty cases where, as here, an unconstitutionally vague aggravator is submitted to the jury, is to review, not reweigh. By virtue of Miss. Code Ann. § 99-19-101, the weighing of aggravating circumstances is a jury function. Wilcher compels us to remand Hill's case for a new sentencing hearing.

B. GUILT-FINDING PHASE
Hill complains, for the third time in this Court, that he is entitled to relief from the guilt-finding phase because he was denied lesser included offense instructions authorizing the jury to find him guilty of either murder less than capital or manslaughter. Consideration and reconsideration of this issue is barred because the identical issue was considered and decided adversely to Hill on direct appeal, Hill v. State, 432 So.2d at 440-41, and again on his second motion for leave to file in the lower court a writ of error coram nobis. In re Hill, 467 So.2d at 671-72.
Hill's attempt to revive this claim runs afoul of the res judicata bar found in Miss. Code Ann. § 99-39-21(3), as well as the direct appeal bar found in § 99-39-21(2), the successive writ bar found in § 99-39-27(9), and the bar imposed by the three-year statute of limitations contained in § 99-39-5(2).
We hold, therefore, that Hill is not entitled to post-conviction relief with respect to the guilt-finding phase. Hill's application for leave to file in the trial court a motion to vacate conviction of capital murder and Hill's motion to vacate his conviction of capital murder are both DENIED.
Because, on the other hand, Miss. Code Ann. § 99-19-101 (Supp. 1993), precludes this Court from performing either a reweighing of aggravating versus mitigating factors or a harmless error analysis as a matter of state law, Hill's application for leave to file a motion to vacate death sentence and his motion to vacate death sentence are GRANTED.
Hill's sentence of death is vacated, and this case is remanded to the Circuit Court of Desoto County for a new sentencing hearing.
Hill's Motion For Leave To Proceed In Forma Pauperis is GRANTED.
Hill's Motion To Stay Proceedings is DENIED.
The State of Mississippi's Motion To Expedite is DENIED as moot.
HILL'S APPLICATION FOR LEAVE TO FILE MOTION TO VACATE CONVICTION DENIED. HILL'S APPLICATION FOR LEAVE TO FILE MOTION TO VACATE DEATH SENTENCE GRANTED AND REMANDED TO THE CIRCUIT COURT OF DESOTO COUNTY FOR A NEW SENTENCING HEARING. HILL'S MOTION TO STAY PROCEEDINGS DENIED. HILL'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS GRANTED. STATE'S MOTION TO EXPEDITE DENIED. STATE'S MOTION TO FILE SUPPLEMENTAL BRIEF GRANTED.
PRATHER, P.J., and SULLIVAN, PITTMAN and BANKS, JJ., concur.
DAN M. LEE, P.J., dissents in part with separate written opinion joined by SMITH, J.
McRAE, J., dissents with separate written opinion joined by LEE, P.J., and SMITH, J.
SMITH, J., concurs in part and dissents in part with separate written opinion joined by LEE, P.J., and JAMES L. ROBERTS, Jr., J.
*550 McRAE, Justice, dissenting:
I would affirm as being procedurally barred.
DAN M. LEE, P.J., and SMITH, J., join this opinion.
DAN M. LEE, Presiding Justice, dissenting:
Under Clemons v. Mississippi, 494 U.S. 738, 110 S.Ct. 1441, 1450-51, 108 L.Ed.2d 725, 741-42 (1990), an appellate court in a weighing state can affirm a death sentence "tainted" by a vague aggravating instruction as to the especially heinous, atrocious or cruel circumstances of the homicide so long as the court found that the vague aggravating instruction constituted harmless error beyond a reasonable doubt. Id., 494 U.S. at 753, 110 S.Ct. at 1451, 108 L.Ed.2d at 741 (relying on Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710-11 (1967)).
Consistent with my dissenting opinions in Irving v. State, 618 So.2d 58, 63-64 (Miss. 1992), Wilcher v. State, 635 So.2d 789, 801 (Miss. 1993), and Wiley v. State, 635 So.2d 802, 805 (Miss. 1993), I believe this is also a proper case for this Court to find that the vague aggravating instruction concerning especially heinous, atrocious or cruel circumstances of the homicide as defined in Clemons, was, at the most, harmless error beyond a reasonable doubt. Therefore, I would deny Hill's Motion to Vacate Death Sentence.
SMITH, J., joins this opinion.
SMITH, Justice, concurring in part, dissenting in part:
I concur in the majority decision that Hill is not entitled to post-conviction relief with respect to the guilt-finding phase. I also agree with the decision denying Hill's application for leave to file in the trial court a motion to vacate his conviction of capital murder. However, I must take exception to the majority decision granting Hill's third time complaint that he is entitled to relief from the sentencing phase and that his sentence of death should be vacated. I would affirm as being procedurally barred.
The majority opinion preserves this Court's confidence in the results of Gilliard v. State, 614 So.2d 370 (Miss. 1992), in which this Court held Clemons v. Mississippi, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), to be an intervening decision and thus controlling in Gilliard. Subsequent to Gilliard, this Court handed down similar opinions with identical controlling findings in a series of cases including Wilcher v. State, 635 So.2d 789 (Miss. 1993), and Wiley v. State, 635 So.2d 802 (Miss. 1993). I dissented from the majority opinion in both Wilcher and Wiley, maintaining that Clemons was not an intervening decision, but rather re-affirming and strengthening of a legal concept first established by the United States Supreme Court in Godfrey v. Georgia, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980). At the least this Court should apply harmless error to the case sub judice. I prefer my applicable reasoning and results in my dissent in Wilcher and adopt those appropriate portions of that opinion in support of this dissenting view.
The majority view in Clemons v. State, 593 So.2d 1004 (Miss. 1992), should have applied the test set forth in Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), thereby altering their decision in Clemons and the subsequent series of similar holdings in other death penalty cases during 1992 and 1993. Hill's case is an "appropriate" case to uphold the jury's sentence of death.
I respectfully dissent.
DAN M. LEE, P.J., and JAMES L. ROBERTS, Jr., J., join this opinion.

ON PETITION FOR REHEARING

[Filed June 29, 1995]
PRATHER, Presiding Justice, for the Court:

I. INTRODUCTION
This petition for rehearing concerns the retroactive application of statutory changes in Miss. Code Ann. § 99-19-105 (Supp. 1994) and our analysis of whether those changes violate the principle of ex post facto laws. In this opinion, this Court answers whether the new statute survives ex post facto analysis *551 for crimes committed on a date before the effective date of those statutory changes. See Johnston v. State, 618 So.2d 90, 94 (Miss. 1993). In doing so, this Court expressly reserves comment on the constitutionality of the statutory changes.
This petition for rehearing by the State of Mississippi was filed January 17, 1995. In the original opinion, this Court held that Alvin Hill (Hill) was improperly sentenced to death using the unconstitutionally vague "heinous, atrocious and cruel" aggravator, without a limiting instruction. Hill v. State, 93-DP-00392, 659 So.2d 547, 548 (Miss. 1994); see Maynard v. Cartwright, 486 U.S. 356, 364-65, 108 S.Ct. 1853, 1859-60, 100 L.Ed.2d 372, 382-83 (1988). This Court also held that, consistent with its prior decisions, it lacked the state statutory and constitutional authority to reweigh a flawed jury verdict. Hill, at 549, citing, e.g., Wilcher v. State, 635 So.2d 789, 791 (Miss. 1993). This Court then remanded Hill to the trial court for a new sentencing hearing. Hill, at 549. On rehearing, this Court will not disturb the opinion on direct appeal.

II. ANALYSIS
The State asserts in its petition for rehearing that in its original opinion of December 21, 1994, this Court ignored the 1994 statutory changes to Mississippi's death penalty procedures that became effective August 23, 1994. The 1994 amendments to Miss. Code Ann. § 99-19-105 (Supp. 1994) require the Court to reweigh the remaining aggravating circumstances against the mitigating circumstances to determine whether a death sentence is proper. House Bill 21, amending Miss. Code Ann. § 99-19-105(3)(d) (effective on approval, August 23, 1994). Hill's resentencing opinion was released December 21, 1994, after the effective date of the statutory changes. The question arises as to whether this change may be applied retroactively to cases tried and affirmed on direct appeal before the statutory change. This Court had held prior to the statute's changes that Hill had the statutory and state constitutional right to a jury's determining a sentence of death. Wilcher v. State, 635 So.2d 789, 791 (Miss. 1993); see Miss. Const. Art. III, § 14; Miss. Code Ann. § 99-19-101 (Supp. 1992). Where there is a state constitutional entitlement to some due process right, the State may not enact legislation to impede that right under ex post facto analysis. Johnston v. State, 618 So.2d 90, 95 (Miss. 1993) (holding ex post facto prohibitions bar retroactive applications of statutory law unless the changes are "procedural and ameliorative."). This Court holds that the changes in Miss. Code Ann. § 99-19-105 (Supp. 1994) affect a substantive right of Hill's, i.e., his right to be sentenced under the statute existing on the date of his offense. Johnston, 618 So.2d at 94. Therefore, these changes are barred under our state constitutional provisions against ex post facto law. Miss. Const. Art. III, § 16. Generally speaking, the penalty of death, by its nature, is a final and ultimate sentence. Lockett v. Ohio, 438 U.S. 586, 598, 98 S.Ct. 2954, 2961, 57 L.Ed.2d 973, 986 (1978) (describing consideration of death penalty as "a truly awesome responsibility."). Special attention must be paid to the reliability and certainty of the aggravating factors present in order to impose this penalty. Zant v. Stephens, 462 U.S. 862, 884, 103 S.Ct. 2733, 2747, 77 L.Ed.2d 235, 255 (1983) (holding that nature of death as punishment heightens "need for reliability" in deciding death is appropriate). In addition, the United States Supreme Court specifically requires an individualized treatment of defendants under the penalty of death. Parker v. Dugger, 498 U.S. 308, 321, 111 S.Ct. 731, 739, 112 L.Ed.2d 812, 826 (1991).[1]
Our caselaw consistently holds that the jury can best make these particular findings. It is the duty of the jury to best judge the credibility and weight of the witnesses in court. McClain v. State, 625 So.2d 774, 781 *552 (Miss. 1993). This court has expressly refused to become a fact-finder, except under extreme circumstances. Strong v. State, 600 So.2d 199, 204 (Miss. 1992) (refusing to set aside verdict of jury unless "unconscionable injustice" results).
This Court, upon only reviewing a cold record, cannot judge the factors of credibility, the strength of testimony, and intangible factors which make a determination of this nature and enormity possible. See McCarty v. State, 554 So.2d 909, 912 (Miss. 1989). This Court can only speculate as to the result a jury would reach, without hearing this testimony firsthand. Jurists have noted that harmless error analysis "amounts to no more than a guess as to what the jury might have decided had it been properly instructed." People v. Rodriguez, 794 P.2d 965, 1000 (Colo. 1990) (Quinn, C.J., dissenting), cert. denied, 498 U.S. 1055, 111 S.Ct. 770, 112 L.Ed.2d 789 (1991).
In addition, there is no provision under our state constitution for this appellate court to become a fact finder in criminal cases. This Court has stated that under our Constitution, the legislature is without authority to invest juries with the power to determine issues of law. Natchez & Southern R.R. v. Crawford, 99 Miss. 697, 713-14, 55 So. 596, 598 (1911). Specifically, Miss. Const. Art. VI, § 146 grants the Supreme Court of Mississippi only so much jurisdiction "as properly belongs to a court of appeals." An appellate court is not typically a finder of fact. Strong, 600 So.2d at 204. As a result, this Court cannot constitutionally make fact findings and weigh facts, particularly with death penalty cases, because this role, in both Mississippi statutory and state constitutional law, is mandated to the jury.
Therefore, this Court determines that Hill has a substantive right to sentencing by jury. In addition, this change in the death penalty law cannot be considered ameliorative, since the change will take away Hill's right to have a jury consider his case, to be replaced with a cold written record of mitigating circumstances reviewed by this Court. Application of the 1994 statutory change to the death penalty statute violates Mississippi constitutional provisions against ex post facto law and bars this statute's applicability to Hill. Johnston v. State, 618 So.2d 90, 95 (Miss. 1993).[2]
For these reasons, this Court denies the petition for rehearing, and remands this case to the DeSoto County Circuit Court for a resentencing hearing of Alvin Hill.
PETITION FOR REHEARING DENIED. REMANDED FOR A NEW RESENTENCING HEARING.
HAWKINS, C.J., and SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
DAN M. LEE, P.J., dissents with separate written opinion.
SMITH, J., dissents with separate written opinion joined by DAN M. LEE, P.J., and JAMES L. ROBERTS, J.

[Filed June 29, 1995]
DAN M. LEE, Presiding Justice, dissenting:
On July 12, 1979, Alvin Hill robbed and executed Robert Lee Watkins. Hill took Watkins to a secluded section of DeSoto County and made Watkins get down on his knees. Then, while Watkins was conscious and kneeling, Hill placed his pistol against the back of Watkins' head and fired three rounds into his skull at point blank range. After robbing and executing Watkins, Hill left Watkins' body in the woods. On August 17, 1979, Watkins' badly decomposed body was discovered by the DeSoto County Sheriff's *553 Office and on August 18, 1979, Hill confessed to Watkins' murder. Hill v. State, 432 So.2d 427 (Miss. 1983). Today, as on numerous occasions, the majority erroneously clings to the notion that this Court is without the authority to conduct harmless error analysis when reviewing capital murder cases in which the "especially atrocious, heinous or cruel aggravator" was used without the proper limiting language. See Clemons v. Mississippi, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990). I submit that this Court can and must apply harmless error analysis in this case. Therefore, consistent with my views expressed in King v. State, 656 So.2d 1168 (Miss. 1995) (Dan Lee, P.J., Dissenting), I respectfully dissent.
For all practical purposes, today's majority opinion declares Miss. Code Ann. § 99-19-105 (Supp. 1994) as amended, unconstitutional. The majority opinion reaches this result by relying on two logically flawed premises. First, that a defendant convicted of capital murder in Mississippi has a "fundamental right" under the Constitution of Mississippi to be sentenced to death by a jury. Second, that if this Court were to apply harmless error analysis in the case sub judice, we, instead of the jury, would be sentencing the defendant to death. Both of these premises are devoid of merit.
Today's majority opinion has another hidden effect on future death penalty legislation in this State. Primarily, I envision that today's majority opinion will be used at some later time to prevent the legislature from amending the death penalty laws of this State. Specifically, if the majority's erroneous contention that the Mississippi Constitution demands that convicted capital murderers be sentenced to death by a jury, then the Legislature will be foreclosed from amending the manner in which the death sentence is imposed, i.e., the Mississippi Legislature will not be free to amend death penalty laws to allow the trial judge to sentence the convicted capital murderer to death. Whether the majority opinion intentionally sets out to achieve this result, I cannot say.

I.
The majority erroneously asserts that Hill has the "statutory and state constitutional right to a jury's determining a sentence of death" and therefore, applying Miss. Code Ann. § 99-19-105 (Supp. 1994) to Hill would be ameliorative under Mississippi's ex post facto doctrine of Hill's right to be sentenced to death by a jury. To support this flawed premise, the majority relies on Wilcher v. State, 635 So.2d 789 (Miss. 1993). In Wilcher, this Court discussed Miss. Code Ann. § 99-19-101 and improvidently stated:
This is particularly so in view of our own Constitution. Article 3, § 26 affords criminal defendants in this state [sic] the right to trial by jury, while Art. 3, § 14 affords the right to due process of law. Although criminal defendants in this State generally have no right to be sentenced by the jury, where a specific statute provides such a guarantee, such as § 99-19-101 (Supp. 1992), these two constitutional provisions operate together to elevate the statutory right to one of constitutional significance which this Court cannot abridge by applying harmless error analysis, whether by disregarding entirely the invalid circumstance or by applying a limiting construction.
635 So.2d at 791.
The above quoted statement from Wilcher is only partially correct. Hill does have a statutory right to have a jury sentence him to death under our present statutory scheme. However, no matter how much the majority attempts to twist and contort the Mississippi Constitution, it cannot logically be argued that the Mississippi Constitution by itself contains provisions which require convicted capital murderers to be sentenced to death by a jury only. Likewise, the United States Supreme Court in Clemons v. Mississippi, 494 U.S. 738, 745, 110 S.Ct. 1441, 1446, 108 L.Ed.2d 725 (1990), recognized that the Constitution of the United States of America does not afford the defendant convicted of capital murder the right to be sentenced to death by a jury. See also Cabana v. Bullock, 474 U.S. 376, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986).
Accordingly, under the Mississippi Constitution, as well as under the Constitution of the United States of America, Hill and other *554 convicted capital murderers have the constitutional right to have a jury determine their innocence or guilt, U.S. Const. amend. VI; Miss. Const. art. 3, § 26 (1890), and they have the constitutional right to due process of law. See U.S. Const. amend. XIV, § 1; Miss. Const. art. 3, § 14. Defendants convicted of capital murder do not, however, have the constitutional right to be sentenced to death by a jury only. The right to be sentenced to death by a jury is purely statutory and thus, the legislature can amend and thus, take away this statutory right. Johnston v. State, 618 So.2d 90, 95 (Miss. 1993). If the people of Mississippi wish to provide convicted capital murderers with such a constitutional right, then the citizens of this State, and not this Court, should amend our constitution through the democratic process as has been done on many occasions.
Another obvious flaw in the majority's opinion is the statement that Hill's substantive right "to be sentenced under the statute existing on the date of his offense" would be impaired if we retroactively apply Miss. Code Ann. § 99-19-105 (Supp. 1994). Clearly, Miss. Code Ann. § 99-19-105 (Supp. 1994) does not affect how Hill or others similarly situated are sentenced. Instead, Section 99-19-105 (Supp. 1994) affects the manner in which this case is adjudicated on appellate review. Contrary to the majority's assertion, application of Miss. Code Ann. § 99-19-105 (Supp. 1994) to Hill's appeal would not constitute a violation of the Ex Post Facto clause of the Mississippi Constitution or of the United States Constitution.
The United States Supreme Court in Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), quoted Beazell v. Ohio, 269 U.S. 167, 169-70, 46 S.Ct. 68, 68-69, 70 L.Ed. 216 (1925), for its concise definition of an ex post facto violation and stated:
It is well settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with of any defense available according to law at the time when the act was committed, is prohibited as ex post facto.

432 U.S. at 292, 97 S.Ct. at 2298, 53 L.Ed.2d at 356[1]. Later, the Dobbert Court once again quoted Beazell and explained that "the constitutional provision [ex post facto] was intended to secure substantial personal rights against arbitrary and oppressive legislation and not to limit the legislative control of remedies and modes of procedure which do not affect matters of substance." 432 U.S. at 293, 97 S.Ct. at 2298, 53 L.Ed.2d at 356.
In Collins v. Youngblood, 497 U.S. 37, 45, 110 S.Ct. 2715, 2720-21, 111 L.Ed.2d 30 (1990), the United States Supreme Court, when discussing whether a change is considered "procedural," stated that "it is logical to think that the term [procedural] refers to changes in the procedures by which a criminal case is adjudicated, as opposed to changes in the substantive law of crimes." In Dobbert, the United States Supreme Court quoted Hopt v. Utah, 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884), and recognized that "[e]ven though it may work to the disadvantage of a defendant, a procedural change is not ex post facto." 432 U.S. at 293, 97 S.Ct. at 2298, 53 L.Ed.2d at 356.
In Dobbert, a case closely analogous to the case at bar, the United States Supreme Court rejected the Petitioner's argument that Florida's statutory changes in its death penalty law between the time he committed the first-degree murder and the time of his trial deprived him of a "substantial right" and thus, constituted an ex post facto violation. In Dobbert, during the time the Petitioner committed the first-degree murder, Florida's death penalty legislation provided for an automatic death sentence unless the jury agreed to impose life in prison. However, after Dobbert committed the first-degree murder, but before he was tried, the Florida Legislature amended its death penalty statutes. The new legislation provided that the *555 jury would provide an advisory sentence, and the trial judge could accept the jury's sentence or the trial judge could choose to disregard the jury's sentence. Dobbert argued unsuccessfully that this change deprived "him of a substantial right to have the jury determine, without review by the trial judge, whether the [death] penalty should be imposed." 432 U.S. at 292, 97 S.Ct. at 2298, 53 L.Ed.2d at 356. The United States Supreme Court rejected Dobbert's argument and stated "it certainly cannot be said with assurance that, had his trial been conducted under the old statute, the jury would have returned a verdict of life." Dobbert, 432 U.S. at 294, 97 S.Ct. at 2299, 53 L.Ed.2d at 357.
Likewise, it appears that Hill's only argument is that given another chance at a jury, he might receive life imprisonment as opposed to the death sentence. Hill's conjecture that another jury might sentence him to life imprisonment is not compelling. See Wilcher v. State, 635 So.2d 789 (Miss. 1994) (Wilcher, on remand, sentenced to death by second jury). Therefore, Hill cannot be heard to complain that under the prior Miss. Code Ann. § 99-19-105, a jury might resentence him to life. The current Miss. Code Ann. § 99-19-105 Supp. 1994, as amended, requiring that the Mississippi Supreme Court apply harmless error analysis or reweighing does not punish as a crime an act previously committed, which was innocent when done; nor make more burdensome the punishment for a crime, after its commission; nor deprive one charged with crime of any defense available according to law at the time when the act was committed. Collins v. Youngblood, 497 U.S. 37, 45, 110 S.Ct. 2715, 2720-21, 111 L.Ed.2d 30 (1990). Its application to Hill therefore is not prohibited by the Ex Post Facto clause of Miss. Const. art. 3, § 16.

II.
Next, we turn to the mistaken premise posited by the majority that if we apply harmless error analysis in the case sub judice, we will invade the province of the jury. I cannot agree and therefore, I adopt my opinion in King v. State, 656 So.2d 1168 (Miss. 1995) (Dan Lee, P.J., dissenting), insofar as it pertains to this issue. The majority's continued adherence to the old adage that this Court cannot apply harmless error analysis because Miss. Code Ann. § 99-19-101 permits the jury alone to impose the death sentence is totally devoid of merit. Alvin Hill came to this Court under a sentence of death imposed upon him by twelve good and true jurors from DeSoto County. If Hill had come to this Court under a life sentence, we could not disagree with the jury's verdict and sentence Hill to death. The majority erroneously equates the affirmance of a death sentence using harmless error analysis with the imposition of a death sentence. Clearly, under our current statutory death penalty scheme, only the jury can sentence the defendant to death. Therefore, if we apply harmless error analysis as required by Miss. Code Ann. § 99-19-105 (Supp. 1994), it cannot be argued with any force that we, instead of the jury, would be sentencing Hill to death. Accordingly, the majority's continued reliance upon this argument is without substance.

CONCLUSION
Effective August 23, 1994, the legislature mandated that we apply Miss. Code Ann. § 99-19-105 (Supp. 1994) to all cases on appeal before this Court. In our December 21, 1994, opinion granting Hill's request for a new sentencing hearing, we ignored Miss. Code Ann. § 99-19-105 (Supp. 1994). See Hill v. State, 659 So.2d 547 (Miss. 1994). Miss. Code Ann. § 99-19-105 (Supp. 1994) clearly applies to all cases on appeal before this Court. Hill's case was clearly on appeal before this Court after the statute became effective. Therefore, Hill's appeal is governed by Miss. Code Ann. § 99-19-105 (Supp. 1994), and we must apply harmless error analysis on appellate review. See King v. State, 656 So.2d 1168 (Miss. 1995) (Dan Lee, P.J., dissenting). I also dissent from the majority's thinly veiled attempt to declare Miss. Code Ann. § 99-19-105 (Supp. 1994) unconstitutional. The majority's contention that convicted murderers have a constitutional right under the Mississippi Constitution to be sentenced to death by a jury is not supported by a common sense reading of our Constitution and is manifestly wrong. Likewise, *556 the majority's contention that this Court would invade the jury's province if we were to apply harmless error analysis to Hill's case is equally flawed. Accordingly, for the foregoing reasons, I respectfully dissent.

[Filed June 29, 1995]
SMITH, Justice, dissenting:
Commencing with its decision in Clemons v. State, 593 So.2d 1004 (Miss. 1992), this Court has consistently held that it lacked the state statutory and constitutional authority to reweigh a flawed jury verdict. In Wilcher v. State, 635 So.2d 789 (Miss. 1993), the Court held that for the same reasons as in Clemons, harmless error analysis could not be applied to remaining aggravating circumstances to determine whether a death sentence was proper.
However, the Legislature, in an August 1994 special session, made substantial changes in Miss. Code Ann. § 99-19-105 (1994 Supp.) granting this Court the statutory authority to reweigh and conduct harmless error analysis on allegedly flawed jury verdicts. The majority, in addressing whether those changes violate the principle against ex post facto laws, emphatically holds that the amended statute does not survive ex post facto analysis. The majority once again maintains that "This Court, upon only reviewing a dry record, cannot judge the factors of credibility, the strength of testimony, and intangible factors which make a determination of this nature and enormity possible." Majority Opinion at 552. See, McCarty v. State, 554 So.2d 909, 912 (Miss. 1989).
The majority, as in Wilcher is once again misguided. I dissented in Wilcher, stating:
Sentence review is nothing short of a judicial reexamination of the proceedings of a lower tribunal by a higher one. Reweighing is simply weighing anew. Obviously, the two terms are somewhat similar. Regardless, it is clear that § 99-19-105 requires review separate from a direct appeal, albeit the two are consolidated for consideration. There is convincing argument that a portion of this review is a one-time affair, aimed entirely at proportionality. Whether one time or more, the fact remains, we review and reweigh every death penalty case that comes before this Court, separate from the direct appeal. Authorized to review one time, we can certainly review again as may be appropriately required. However, other parts of the statute clearly refer to review of sufficiency of the evidence, factual aggravators, punishment, and errors by way of appeal.
This further establishes the State statutory authority of this Court for reweighing and review of death cases, in addition to constitutional authority, allowed by the United States Supreme Court in Clemons. In reviewing and reweighing, this Court may affirm a death sentence, or set the sentence aside and remand for modification of the sentence to life imprisonment. We may also reverse and remand for a new trial or reverse and render a case. The essential, mandatory element for review or reweighing is that, prior thereto, a jury has returned a sentence of death in the case being reviewed. Mississippi law requires that only a jury can impose a sentence of death. This Court is not imposing when after review, we affirm a death sentence. Except for a different criteria and heightened scrutiny, we may affirm death sentences just as we may affirm life sentences.
Wilcher, 635 So.2d at 796-797. (Smith, J., dissenting).
That I was correct in my Wilcher analysis is supported by the recent amendments to Miss. Code Ann. § 99-19-105 (Supp. 1994), which serve to strengthen my former position. The statute, as amended, now includes the following pertinent parts:
(3) With regard to the sentence, the Court shall determine:
(d) Should one or more of the aggravating circumstances be found invalid on appeal, the Mississippi Supreme Court shall determine whether the remaining aggravating circumstances are out-weighed by the mitigating circumstances or whether the inclusion of any invalid circumstance was harmless error, or both.
(5) The Court shall include in its decision a reference to those similar cases *557 which it took into consideration. In addition to its authority regarding correction of errors, the court, with regard to review of death sentences, shall be authorized to:
(b) Reweigh the remaining aggravating circumstances against the mitigating circumstances should one or more of the aggravating circumstances be found to be invalid, and (I) affirm the sentence of death or (ii) hold the error in the sentence phase harmless error and affirm the sentence of death or (iii) remand the case for a new sentencing hearing; or
Can the amendments to § 99-19-105 be applied to all cases pending before the Court on direct appeal as well as post-conviction review where an invalid aggravator has been given the jury? They most assuredly can be applied retroactively. The question then turns on whether the amendments to § 99-19-105 survive ex post facto analysis. Based on the Supreme Court decisions in Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), Collins v. Youngblood, 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990), and California Department of Corrections v. Morales, ___ U.S. ___, 115 S.Ct. 1597, 131 L.Ed.2d 588, the amendments in question do not constitute ex post facto violations.
Dobbert has often been cited by this Court justifying the consistent and retroactive application of amendments to capital sentencing statutes. See, Johnston v. State, 618 So.2d 90, 95 (Miss. 1993); Jordan v. State, 464 So.2d 475, 482 (Miss. 1985); Irving v. State, 441 So.2d 846, 852-853 (Miss. 1983); Irving v. State, 361 So.2d 1360, 1368 (Miss. 1978); Upshaw v. State, 350 So.2d 1358, 1361 (Miss. 1977); Gilliard v. State, 428 So.2d 576 (Miss. 1983); Evans v. State, 422 So.2d 737 (Miss. 1982); Bell v. State, 353 So.2d 1141, 1143 (Miss. 1977).
In Irving v. Hargett, 518 F. Supp. 1127, 1140 (N.D.Miss. 1981), the district court agreed with this Court's decision that the 1977 amendments to the death penalty statutes establishing a bifurcated sentencing procedure did not constitute an ex post facto violation.
The Supreme Court, in Dobbert, considering an ex post facto challenge to a Florida statute passed after that Court's decision in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), held:
It is equally well settled, however, that "[t]he inhibition upon the passage of ex post facto laws does not give a criminal a right to be tried, in all respects, by the law in force when the crime charged was committed." Gibson v. Mississippi, 162 U.S. 565, 590, 16 S.Ct. 904, 910, 40 L.Ed. 1075 (1896). "[T]he constitutional provision was intended to secure substantial personal rights against arbitrary and oppressive legislation, see Malloy v. South Carolina, 237 U.S. 180, 183, [35 S.Ct. 507, 508, 59 L.Ed. 905], and not to limit the legislative control of remedies and modes of procedure which do not affect matters of substance." Beazell v. Ohio, supra, at 171, 46 S.Ct. at 69, 70 L.Ed. 216.
Even though it may work to the disadvantage of a defendant, a procedural change is not ex post facto. For example, in Hopt v. Utah, 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884), as of the date of the alleged homicide a convicted felon could not have been called as a witness. Subsequent to that date, but prior to the trial of the case, this law was changed; a convicted felon was called to the witness stand and testified, implicating Hopt in the crime charged against him. Even though this change in the law obviously had a detrimental impact upon the defendant, the Court found that the law was not ex post facto because it neither made criminal a theretofore innocent act, nor aggravated a crime previously committed, nor provided greater punishment, nor changed the proof necessary to convict. Id. at 589, 4 S.Ct. at 210, 28 L.Ed. 262.
In the case at hand, the change in the statute was clearly procedural. The new statute simply altered the methods employed in determining whether the death penalty was to be imposed; there was no change in the quantum of punishment attached to the crime. The following language from Hopt v. Utah, supra, applicable with equal force to the case at hand summarizes our conclusion that the change was *558 procedural and not a violation of the Ex Post Facto Clause:
"The crime for which the present defendant was indicted, the punishment prescribed therefor, and the quantity or degree of proof necessary to establish his guilt, all remained unaffected by the subsequent statute." 110 U.S. at 589, 4 S.Ct. at 210, 28 L.Ed. 262. [Emphasis added.]
432 U.S. at 293-94, 97 S.Ct. at 2298-99, 53 L.Ed.2d at 356-357.
In Collins v. Youngblood, the Supreme Court was presented an ex post facto challenge to a Texas statute which allowed the appellate court to reform an improper sentence. The statute at issue was passed by that state's legislature after Youngblood's conviction and sentence. The Supreme Court defined an ex post facto law:
So well accepted were these principles that the Court in Beazell v. Ohio, 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925), was able to confidently summarize the meaning of the Clause as follows:
"It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as ex post facto." Id. at 169-170, 46 S.Ct. at 68-69, 70 L.Ed. 216.
See also, Dobbert v. Florida, 432 U.S. 282, 292, 97 S.Ct. 2290, 2297, 53 L.Ed.2d 344 (1977).
The Beazell formulation is faithful to our best knowledge or the original understanding of the Ex Post Facto Clause: Legislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts. [Emphasis added.]
497 U.S. at 43, 110 S.Ct. at 2719, 111 L.Ed.2d at 39.
The 1994 amendments to § 99-19-105, passed by the Mississippi Legislature are procedural rather than substantive. Youngblood addressed an issue identical to the one we here consider. Although Hill may now be at a disadvantage, the altered situation by the legislature is certainly not ex post facto as that argument has been soundly rejected by the United States Supreme Court in Youngblood. Dobbert and Beazell both held that legislatures may not alter retroactively the definition of crimes or increase the punishment for criminal acts. The Mississippi Legislature's amendment to § 99-19-105 adheres to these principles.
The Supreme Court in Youngblood further stated:
The new statute is a procedural change that allows reformation of improper verdicts. It does not alter the definition of the crime of aggravated sexual abuse, of which Youngblood was convicted, nor does it increase the punishment for which he is eligible as a result of that conviction.
Several of our cases have described as "procedural" those changes which, even though they work to the disadvantage of the accused, do not violate the Ex Post Facto Clause. Dobbert v. Florida, supra, at 292-293, and n. 6, 97 S.Ct. at 2297-98, 53 L.Ed.2d 344; Beazell v. Ohio, 269 U.S., at 171, 46 S.Ct. at 69, 70 L.Ed. 216; Mallett v. North Carolina, 181 U.S. 589, 597, 21 S.Ct. 730, 733, 45 L.Ed. 1015 (1901). While these cases do not explicitly define what they mean by the word "procedural," it is logical to think that the term refers to changes in the procedures by which a criminal case is adjudicated, as opposed to changes in the substantive law of crimes.
497 U.S. at 44-45, 110 S.Ct. at 2720, 111 L.Ed.2d at 41-42.
The United States Supreme Court most recently considered an alleged ex post facto violation in California Department of Corrections v. Morales, ___ U.S. ___, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995). Morales was allowed in 1980 to plead nolo contendere to second-degree murder of his wife, despite a previous conviction for first-degree murder, and was sentenced for 15 years to life. The law in effect in 1980 at the time of Morales' offense entitled him to a parole hearing in 1989 and in each successive year thereafter.
*559 However, in 1981, California amended its parole statute permitting the Board of Prison Terms to delay parole hearings for multiple murders for up to three years, provided the Board found that it was not reasonable to expect that parole would be granted at a hearing during the following years.
Morales filed a federal habeas corpus petition claiming that the 1981 amendment constituted an ex post facto law barred by the United States Constitution. The District Court denied Morales' petition for habeas corpus, but the Ninth Circuit Court of Appeals reversed, holding that the retrospective law made a parole hearing less accessible to Morales, thus effectively increasing his sentence in violation of the Ex Post Facto Clause.
Declining to find a violation of the Ex Post Facto Clause, the Supreme Court in a 7-2 opinion by Justice Thomas, maintained a long established precedent, holding:
The amendment did not increase the "punishment" attached to respondent's crime. It left untouched his indeterminate sentence and the substantive formula for securing any reductions to the sentencing range. By introducing the possibility that the Board would not have to hold another parole hearing in the year or two after the initial hearing, the amendment simply alters the method to be followed in fixing a parole release date under identical substantive standards.
Under respondent's expansive view, the Clause would forbid any legislative change that has any conceivable risk of affecting a prisoner's punishment. In contrast, this Court has long held that the question of what legislative adjustments are of sufficient moment to transgress the constitutional prohibition must be a matter of degree, and has declined to articulate a single "formula" for making this determination. There is no need to do so here, either, since the amendment creates only the most speculative and attenuated possibility of increasing the measure of punishment for covered crimes, and such conjectural effects are insufficient under any threshold that might be established under the Clause.
Morales, ___ U.S. at ___, 115 S.Ct. at 1598-99.
The Supreme Court in Morales revisited the case of Collins v. Youngblood, 497 U.S. 37, 41, 110 S.Ct. 2715, 2718, 111 L.Ed.2d 30 (1990) and reaffirmed its long held position that the question of what legislative adjustments are of sufficient moment to transgress the constitutional prohibition must be a matter of degree and declined to articulate a single formula for making the determination. Id. at ___, 115 S.Ct. at 1603 quoting Beazell, 269 U.S. at 171, 46 S.Ct. at 69. The Supreme Court stated:
In Collins v. Youngblood, 497 U.S. 37, 41, 110 S.Ct. 2715, 2718, 111 L.Ed.2d 30 (1990), we reaffirmed that the Ex Post Facto Clause incorporated "a term of art with an established meaning at the time of the framing of the Constitution." In accordance with this original understanding, we have held that the Clause is aimed at laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts." Id., at 43, 110 S.Ct. at 2719 (citing Calder v. Bull, 3 Dall. 386, 391-392, 1 L.Ed. 648 (1798) (opinion of Chase, J.)); Beazell v. Ohio, 269 U.S. 167, 169-170, 46 S.Ct. 68, 68-69, 70 L.Ed. 216 (1925).
The Supreme Court considered and distinguished the trio of cases, Lindsey v. Washington, 301 U.S. 397, 401, 57 S.Ct. 797, 799, 81 L.Ed. 1182 (1937); Miller v. Florida, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987); and Weaver v. Graham, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), all cited by Morales as authority for the proposition that the 1981 amendment to California's parole law violated the Ex Post Facto Clause. Morales claimed that the amendment increased the punishment attached to his crime. The Supreme Court disagreed:
Indeed, contrary to the approach advocated by respondent, we have long held that the question of what legislative adjustments "will be held to be of sufficient moment to transgress the constitutional prohibition" must be a matter of "degree." Beazell, 269 U.S., at 171, 46 S.Ct., at 69. In evaluating the constitutionality of the 1981 amendment, we must determine whether it produces a sufficient risk of *560 increasing the measure of punishment attached to the covered crimes. We have previously declined to articulate a single "formula" for identifying those legislative changes that have a sufficient effect on substantive crimes or punishments to fall within the constitutional prohibition, see Id., at 171, 46 S.Ct., at 69, and we have no occasion to do so here. The amendment creates only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for covered crimes, and such conjectural effects are insufficient under any threshold we might establish under the Ex Post Facto Clause. See Dobbert, 432 U.S., at 294, 97 S.Ct., at 2299.
Morales, ___ U.S. at ___, 115 S.Ct. at 1603.
The majority primarily relies upon Johnston v. State, 618 So.2d 90, 95 (Miss. 1993) wherein this Court held that ex post facto prohibitions bar retroactive applications of statutory law unless the changes are "procedural and ameliorative."
Johnston avails the majority little, as it is clearly distinguishable from the case at bar. In fact, Johnston raised ex post facto issues practically identical to those raised in Lindsey, Miller and Weaver, which were soundly rejected as distinguishable by the Supreme Court in Morales. Johnston, tried and convicted in 1989 of a 1976 murder, was sentenced as an habitual offender under Miss. Code Ann. § 99-19-81. Johnston complained that the application of the statute was error because such statute did not exist in 1976. The jury decided against death for Johnston. The only existing alternative for sentence at the time of the commission of the offense under Miss. Code Ann. § 97-3-21 was life imprisonment.
As the Johnston Court noted, "However, his life sentence may not be qualified by the preclusion of parole pursuant to our enhancement statute for habitual offenders as this statute was not in existence at the time Johnston committed his offense." Id. at 95-96. What is clear is that in Johnston the application of § 99-19-81 to Johnston, thereby enhancing his punishment to life imprisonment without benefit of parole, would have substantially increased the punishment for Johnston when the jury had already rejected a sentence of death and he was entitled to be sentenced only to life imprisonment under the statute that existed at the time of his offense.
Johnston was a clear violation of the Ex Post Facto Clause. The cases of Lindsey, Miller and Weaver that Morales argued to the Supreme Court in Morales were all enhanced punishment cases in clear violation of the Ex Post Facto Clause. The Supreme Court rejected Morales' argument. The case sub judice is plainly not a violation of ex post facto either and this Court should reject such argument.
The majority, by footnote, agrees with the recent federal district court decision that retroactive application of Miss. Code Ann. § 99-19-105 (1994 Supp.) would violate ex post facto doctrine under Mississippi law. Dufour v. Hargett, No. 3:87cv74GR (S.D.Miss. Oct. 3, 1994), slip op. at 8-9. Majority Opinion at 552. However, the majority fails to explain that any implication from the District Court that it was unconstitutional to apply the amendments to § 99-19-105 to all death row inmates was resolved by that court's opinion on the State's Motion to Alter or Amend Judgment. The District Court in its decision on the State's Motion to Alter made clear that it did not apply its opinion to all death row inmates, but rather limited its opinion specifically to Dufour. Id., slip op. at 5, ftnt 1.
In addition to Dufour, it is noted that the federal courts also vacated the sentence of death on other grounds in Smith v. State, 648 So.2d 63 (Miss. 1994). The issue of reweighing or harmless error analysis was consequently moot in both of those cases. The death penalty was vacated by the federal courts in advance of this Court's consideration of either of those cases, hence there was no need to address the moot question. Nor can it be said that this Court in those cases implicitly rejected application of the amended statute to others similarly situated, because this Court never considered or discussed the issue. If the majority of this Court follows federal district or circuit courts decisions, we do so only because we choose or elect to do so, not because we are required. *561 This Court is only required to apply precedent decisions of the United States Supreme Court. Lockhart v. Fretwell, 506 U.S. ___, ___-___, 113 S.Ct. 838, 846, 122 L.Ed.2d 180, 193-194 (1993) (Thomas, J., concurring); Steffel v. Thompson, 415 U.S. 452, 482, n. 3, 94 S.Ct. 1209, 1227, n. 3, 39 L.Ed.2d 505 (1974) (Rehnquist, J., concurring).
The precedent decisions of Dobbert, Youngblood and Morales applied to the case at bar, clearly indicate no vested right of Hill was impaired that would constitute an Ex Post Facto violation. The legislature's amendments to Miss. Code Ann. § 99-19-105 under the aforementioned decisions did not punish as a crime an act previously committed which was innocent when done, did not make more burdensome the punishment for a crime, after its commission, nor deprive Hill of any defense available according to law at the time when the act was committed. The amendments are procedural in nature rather than substantive.
This Court should apply the amendments to § 99-19-105 (1994 Supp.) to all death cases, both on direct appeal and upon post-conviction review. In Hill's case, we should conduct a reweighing or harmless error analysis under amended § 99-19-105 (1994 Supp.) and reaffirm the jury's sentence of death. This case is most definitely an "appropriate" case to do so.
Finally, concerning the principle of finality of judgments, there comes a time when repeated presentation and re-litigation of issues must come to an end. Hill's third time post-conviction relief request should be procedurally barred. I am again reminded of Chief Justice Neville Patterson's contribution to this subject in Irving v. State, 498 So.2d 305, 320 (Miss. 1986). He stated:
Finally, while this petition is not frivolous, litigation must come to an end at some time. This case has been tried, reviewed, and combed over by two trial juries, at least four times by this Court, many times by the U.S. Supreme Court and U.S. District Court over a period of time exceeding ten years. By the Grace of God, when will this litigation be concluded?
Id. at 320.
Hill's case is in the same posture as Irving. It is long past the time to put some finality into this case ending this protracted litigation once and for all.
I respectfully dissent.
DAN M. LEE, P.J., and JAMES L. ROBERTS, J., join this opinion.
NOTES
[1] The Florida sentencing procedure in Parker is factually distinguishable from Mississippi law. Under Florida statutory law, Florida trial court judges pronounce the sentence, and the jury is limited to only advising the trial court as to an appropriate penalty. Parker, 498 U.S. at 310, 111 S.Ct. at 734, 112 L.Ed.2d at 819. In contrast, Mississippi juries have traditionally had the statutory and constitutional responsibility to determine the death penalty. See Miss. Code Ann. § 99-19-101 (1994 rev.).
[2] This Court notes that a federal district court in the southern district of Mississippi has determined that retroactive application of Miss. Code Ann. § 99-19-105 (Supp. 1994) would violate ex post facto doctrine under Mississippi law. Dufour v. Hargett, No. 3:87cv74GR (S.D.Miss. Oct. 3, 1994), slip op. at 8-9. This Court agrees with the finding of that court, and as the final arbiter of Mississippi law, we likewise hold that retroactive application of these changes to the death penalty statute would violate our prohibitions of ex post facto doctrine. We make this statement to emphasize our sole reliance on state statutory and state constitutional law in making our decision. See Michigan v. Long, 463 U.S. 1032, 1040-42, 103 S.Ct. 3469, 3476-77, 77 L.Ed.2d 1201, 1214-15 (1983).
[1] We cited Dobbert with approval in Johnston v. State, 618 So.2d 90, 95 (Miss. 1993), when discussing Johnston's ex post facto argument.