353 So.2d 1141 (1977)
Charles S. BELL
v.
STATE of Mississippi.
No. 50170.
Supreme Court of Mississippi.
November 9, 1977.
Rehearing Denied January 25, 1978.
*1142 Paul Richard Lambert, Hattiesburg, for appellant.
A.F. Summer, Atty. Gen. by Wayne Snuggs, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and SUGG and WALKER, JJ.
PATTERSON, Chief Justice, for the Court:
Charles S. Bell appeals from a conviction of capital murder and life sentence by the Circuit Court of Forrest County.
At approximately eight o'clock on the evening of May 29, 1976, Charles S. Bell entered a Mr. Quik store in Hattiesburg, Mississippi. Michael Romanoff, the store manager, was behind the cash register and John Thomas, an employee, was in the kitchen. Thomas testified for the state that he heard the front door of the store and one of the cooler doors open and close. He also heard a voice command, "Open the cash register," whereupon he entered the public portion of the store and saw Bell pointing a pistol at Romanoff. When his presence was observed by Bell, he was directed to put up his hands. Bell reiterated his demand of Romanoff and fired a shot by his head. When the manager failed to respond a third time, Thomas asked Romanoff what he should do. Romanoff replied that he could hit the floor and seized a carton of beer and threw it at Bell who reacted by shooting Romanoff and fleeing the scene. Romanoff died shortly afterward from three bullet wounds. Bell was later identified by Thomas in a lineup in St. Louis, Missouri, where he had been apprehended on other charges.
The court permitted an amendment of the indictment prior to trial so that it might cite Mississippi Code Annotated section 97-3-19(2)(e) (Supp. 1977) upon which the charge of capital murder was based and thereafter overruled defendant's motion to quash the indictment on the grounds the statute cited was unconstitutional.
Bell testified in his own behalf during the trial, stating he was nineteen years of age when the crime occurred and admitting previous convictions of two armed robberies, aggravated assault and second degree burglary. After considering the evidence, the jury returned a guilty verdict of capital murder, but was unable to agree on the sentence after hearing the aggravating and mitigating circumstances in the separate sentencing proceeding. Therefore the court sentenced Bell to life imprisonment and then overruled a motion for a new trial.
The appellant first complains the indictment should have been quashed because it failed to cite and define the offense charged. The indictment as initially written and without its formal parts charged: "... did willfully, unlawfully, and feloniously, and of his malice aforethought, kill and murder Michael Romanoff, a human being, while in the commission of the crime of armed robbery, or in an attempt to commit armed robbery." It was amended prior to trial so as to charge: "... did willfully, unlawfully, and feloniously, and of his malice aforethought, kill and murder Michael Romanoff, a human being, while in the commission of the crime of armed robbery, or in an attempt to commit armed robbery, in violation of Section 97-3-19 (2)(e) of the Mississippi Code of 1972, as Amended, ..." (Emphasis added.) It thus satisfies Mississippi Code Annotated section 99-17-20 (1972) which requires the indictment of any crime punishable by death to cite the section and subsection of the code defining the offense alleged to *1143 have been committed. See Varnado v. State, 338 So.2d 1239 (Miss. 1976). As the amended indictment correctly cites the statute defining capital murder when homicide occurs during the commission or attempted commission of a robbery, we conclude this assignment of error is without merit.
Bell next argues the indictment should have been quashed because his true age was not established during the proceedings against him thereby violating his constitutional rights under the Fourteenth Amendment of the United States Constitution. He now contends he was actually seventeen years of age at the time of the crime and therefore was subject to the jurisdiction of the youth court. Although we follow the established principle that objections and exceptions not jurisdictional cannot be raised for the first time on appeal, we nevertheless think a statement concerning jurisdiction to be appropriate. Bell's age of seventeen, if this be correct, was not a jurisdictional defect because Mississippi Code Annotated section 43-21-31 (1972) vests the circuit court with exclusive jurisdiction of a minor thirteen years or older if he be charged with a crime punishable by life imprisonment or death. Wansley v. State, 339 So.2d 989 (Miss. 1976). We are of the opinion this assignment of error is without merit.
Lastly, Bell attacks the application of the bifurcated trial promulgated in Jackson v. State, 337 So.2d 1242 (Miss. 1976), and contends the Jackson standard imposed an ex post facto law upon him thereby violating his due process rights. We observe, however, that he was first provided a trial to determine his guilt or innocence and upon being found guilty was provided a separate hearing to determine his sentence where both the state and the appellant presented evidence of aggravating and mitigating circumstances in accord with Jackson. We are of the opinion that Bell failed to demonstrate any prejudice to his due process rights by this procedure, but rather benefited by it because the law before Jackson mandated the death penalty under similar indictment and facts.
Moreover, the requirements of Jackson affect procedure and not substance and on the whole are ameliorative. In such case, the appellant is not subjected to an ex post facto violation. In Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), the murders for which Dobbert was convicted and sentenced to death occurred prior to the United States Supreme Court decision in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). At that time Florida law mandated that a person convicted of a capital felony be punished by death unless the jury, by majority vote, recommended mercy, in which event the court was required to impose a life sentence. After the Florida Supreme Court held the death penalty statutes unconstitutional under Furman, that state's legislature enacted a new death penalty procedure, upheld in Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), under which Dobbert was tried. After conviction and sentence to death, the case reached the United States Supreme Court which rejected Dobbert's claim that the changes in the death penalty statute between the time of the murders and the trial were ex post facto laws. The Court concluded that the changes in the law were procedural, and on the whole ameliorative, and there was no ex post facto violation.
In making this determination, it emphasized the old and new laws must be compared in toto and noted the former procedure mandated the death penalty "unless the jury, in its unbridled discretion, made a recommendation for mercy." It observed that the new procedure providing the constitutional safeguards subsequent to Furman included a separate sentencing procedure benefiting a defendant because it permitted mitigating evidence relevant to sentence without prejudice to the guilt determination. A portion of Chief Justice Burger's concurring opinion is appropriate:
... A crucial factor in this case, for me, is that, as the Court's opinion recites, when petitioner committed the crime, a Florida statute permitted the death penalty for the offense. Petitioner was at *1144 least constructively on notice that this penalty might indeed follow his actions. During the time which elapsed between the commission of the offense and the trial, the statute was changed to provide different procedures for determining whether death was an appropriate punishment. But these new procedures, taken as a whole, were, if anything, more favorable to the petitioner; consequently the change cannot be read otherwise than as the Court's opinion suggests.
(432 U.S. at 303, 97 S.Ct. at 2303, 53 L.Ed.2d at 363).
Similarly, Bell's position is benefited inasmuch as subsequent to Jackson the jury is required to "unanimously find in writing that after weighing the mitigating circumstances and the aggravating circumstances one against the other that the mitigating circumstances do not outweigh the aggravating circumstances and that the defendant should suffer the penalty of death." (337 So.2d at 1256) The life sentence evidences the fact that Bell benefited by the procedures required by Jackson rather than being prejudiced by them. We conclude this assignment of error is also without merit.
We have studied this record in its entirety and find no error therein, but rather overwhelming evidence of a brutal homicide committed in an attempted robbery. The conviction and sentence are affirmed.
AFFIRMED.
INZER and SMITH, P. JJ., and ROBERTSON, SUGG, WALKER, BROOM, LEE and BOWLING, JJ., concur.