618 So.2d 90 (1993)
Chester Jordan JOHNSTON, Jr.
v.
STATE of Mississippi.
No. 90-KA-1098.
Supreme Court of Mississippi.
April 22, 1993.
*91 P.J. Townsend, Jr., Townsend McWilliams & Holladay, Drew; James N. Sherman, Jr., Townsend McWilliams & Holladay, Indianola, for appellant.
Michael C. Moore, Atty. Gen., Mary Margaret Bowers, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and SULLIVAN and BANKS, JJ.
SULLIVAN, Justice, for the Court:
In June of 1976, Ralph Taylor Edwards, Jr., was found dead in his automobile near Indianola, Mississippi. He had been robbed and shot in the head.
In 1981, Highway Patrol Officer Jessie Bingham got a tip from an inmate that *92 Johnston had been involved in Edwards' killing, which he related to Sheriff Sessums. Bingham and the sheriff went through the sheriff's file on the Edwards case and found only four or five polaroid pictures of the victim and some typed statements. Bingham suspected Johnston and confronted him, but Johnston denied any involvement in the crime. Bingham later returned the Edwards file to the sheriff's office.
In 1989, Mark Ferretti was questioned about his involvement in other crimes, and his answers reopened the Edwards case. Tracie Ferretti, Mark Ferretti's ex-wife, was granted immunity by the prosecution in exchange for her testimony in the upcoming Johnston trial. Johnston was arrested and charged with capital murder.
At trial Tracie Ferretti testified that Johnston, Mark Ferretti, and Marsha Baldridge had planned to rob Edwards. Johnston had a .25 calibre pistol and Tracie, Johnston, and Mark Ferretti were in Mark's car on Highway 448 when Johnston fired several shots at Edwards. Edwards' vehicle then veered off the road. Johnston went to the car, returned and told the Ferrettis to leave quickly and keep their mouths shut. He said they had killed Edwards for $20.00.
Sharon Tisdale, Johnston's former sister-in-law, who was following the Ferretti car on Highway 448 on that day, corroborated Tracie Ferretti's testimony.
Johnston took the stand in his own defense and denied any involvement in Edwards' murder. Johnston's main defense was alibi as he said he thought he was in Jackson, Mississippi, on the day in question.
The jury retired, then returned a verdict of capital murder and Chester Jordan Johnston, Jr., was sentenced by Judge Davis to life imprisonment without parole in the custody of the Mississippi Department of Corrections.
On appeal, Johnston claims:
1. That the State failed to produce certain physical evidence and other exculpatory items in violation of his discovery request;
2. That the trial judge erroneously limited the cross-examination of Tracie Ferretti; and
3. That he was improperly sentenced as an habitual offender under Mississippi Code Annotated, Section 99-19-81.

I.

DID THE LOWER COURT ERR IN FAILING TO DISMISS THIS CAUSE AFTER THE STATE FAILED TO PRODUCE CERTAIN PHYSICAL EVIDENCE AND OTHER ITEMS WHICH POSSESSED EXCULPATORY VALUE?
Johnston claims that various items of physical evidence, which evidently had been lost, may have possessed exculpatory value to him. The loss of these items, according to Johnston, warranted dismissal of the charges against him.
Johnston is incorrect. The State has the duty to preserve evidence, but that duty is limited to that evidence which "might be expected to play a significant role in the suspect's defense." Tolbert v. State, 511 So.2d 1368, 1372 (Miss. 1987).
The evidence at issue here consists of two guns, the bullets recovered from Edwards' head and his vehicle, seven cartridges, one clip, and photographs of the victim at the crime scene and of the interior of the victim's automobile. Every witness who testified about the search for this evidence stated that there had been no intentional destruction of the evidence and the trial judge agreed. There is therefore no inference that the evidence would have been unfavorable to the State. Whether this evidence would have played a significant role in Johnston's case depends on whether the exculpatory nature and value was apparent before it was lost and whether it was of such a nature that Johnston could not obtain comparable evidence by other reasonable means. Id.
Johnston's defense was alibi and he had stated his intention to raise this defense prior to the time the trial judge ruled on *93 the motion to dismiss. Johnston admits in his brief that the loss of evidence did not affect his ability to present the defense of alibi. He claims, however, that it was his ability to discredit the State's case that was harmed by the evidence lost. The prosecution, however, did not claim that Johnston's fingerprints were on either of the lost guns or that he was in any way connected to the missing guns. In fact, the FBI crime lab determined that neither of the two guns tested in connection with Edwards' murder had fired the bullet that was removed from Edwards' head. The State's case against Johnston was based on the testimony of Tracie Ferretti.
None of the missing evidence appears to have had exculpatory value and none would have discredited the testimony of Tracie Ferretti. Johnston has failed to show how the missing evidence could have helped his case, other than by conjecture. The mere possibility that the evidence might have helped his case is insufficient. The trial judge properly denied Johnston's motion to dismiss.

II.

DID THE TRIAL COURT ERR IN LIMITING THE CROSS-EXAMINATION OF TRACIE FERRETTI CONCERNING HER PAST HISTORY OF CRIMINAL ACTIVITY AND PAST DRUG INVOLVEMENT AND THE PAST HISTORY OF CRIMINAL ACTIVITY AND PAST DRUG INVOLVEMENT OF MARK FERRETTI?
"The relevancy and admissibility of evidence are largely within the discretion of the trial court and reversal may be had only where that discretion has been abused." Johnston v. State, 567 So.2d 237, 238 (Miss. 1990). The discretion of the trial judge, however, must be exercised within the boundaries of the Mississippi Rules of Evidence. Johnston, 567 So.2d at 238. See M.R.E. 103(a), 104(a).
M.R.E. 611(b) allows wide-open cross-examination so long as the matter probed is relevant. M.R.E. 611(b), Comment; State Highway Com'n of Miss. v. Havard, 508 So.2d 1099, 1102 (Miss. 1987). A judge may limit cross-examination to serve one of the purposes stated in M.R.E. 611(a), to wit: to make the examination effective for ascertaining the truth, to avoid waste of time, and to protect witnesses from harassment or undue embarrassment. M.R.E. 611(b), Comment; M.R.E. 611(a). See also Sayles v. State, 552 So.2d 1383, 1386 (Miss. 1989).
Johnston argues that the past criminal activity of the Ferrettis was relevant pursuant to M.R.E. 404(b) to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The Ferrettis, however, were not on trial for the murder of Edwards. Mark Ferretti was not even a witness in this case. The proper test of relevancy is found in M.R.E. 401: evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable is relevant. It does not appear that the Ferrettis' past criminal history or drug use is relevant, therefore such questions were properly prevented by the trial judge. M.R.E. 402.
Johnston's argument gains some force when grounded on M.R.E. 404(a)(3) and 608. M.R.E. 404(a)(3) allows character evidence of a witness as provided in Rules 607, 608 and 609. M.R.E. 607 provides that any party may attack the credibility of a witness. M.R.E. 609 is inapplicable as Johnston admits there were no convictions for the past criminal activities about which he sought to elicit testimony. M.R.E. 608 provides that specific instances of conduct of a witness may be inquired into on cross-examination to attack the credibility of the witness if probative of truthfulness or untruthfulness.
The case of McInnis v. State, 527 So.2d 84, 88 (Miss. 1988), addressed the admissibility of a prior arson conviction to impeach, pursuant to M.R.E. 609. Rule 609(a)(1) allows use of prior convictions for the purpose of attacking the credibility of a witness on cross-examination if the conviction has probative value. McInnis, 527 So.2d at 88. This Court said:

*94 At the risk of belaboring the obvious, the prior conviction is offered to impeach. Rule 609 allows use of prior convictions "for the purpose of attacking the credibility of the witness" and for no other. The issue with respect to which the prior conviction must be relevant, if it is to be admissible, is the defendant's propensity for truthfulness as a witness.
McInnis, 527 So.2d at 88.
We are now faced with the question of admissibility of specific instances of conduct to impeach, pursuant to M.R.E. 608. Rule 608(b) allows use of specific instances of conduct for the purpose of attacking (or supporting) the credibility of a witness on cross-examination if probative of truthfulness or untruthfulness. M.R.E. 608(b). To paraphrase McInnis, the specific instances of conduct were offered to impeach. Rule 608 allows use of specific instances of conduct for the purpose of attacking [or supporting] the credibility of the witness and for no other. The issue with respect to which of the specific instances of conduct must be relevant, if they are to be admissible, is the witness' propensity for truthfulness [or the propensity for truthfulness of another witness as to whose character the witness being cross-examined has testified].
In order to be admissible, the past criminal and drug activities of Tracie Ferretti must be relevant to her propensity for truthfulness as a witness. Tracie's testimony can not be used to attack Mark Ferretti's credibility as Mark was not a witness in this case. M.R.E. 608(b)(2). We fail to see how either marijuana use or robbery have any bearing on a person's truthfulness. In Stevenson v. State, 606 So.2d 1103, 1107-08 (Miss. 1992), we declined to find the trial court in error for failure to perform an on the record determination of whether the probative value of a prior burglary conviction outweighed its prejudicial value because there had been no threshold showing that burglary bears upon a witness' propensity for truthfulness. And in Townsend v. State, 605 So.2d 767, 770 (Miss. 1992), we held that burglary is not ordinarily admissible as a crime involving dishonesty or false statement under M.R.E. 609(a)(2).
Neither robbery nor marijuana use, the activities about which Johnston sought to elicit testimony, are probative of Tracie Ferretti's character for truthfulness or untruthfulness; therefore, testimony concerning these activities was irrelevant and the trial judge did not commit error.

III.

DID THE TRIAL JUDGE ERR IN SENTENCING JOHNSTON AS AN HABITUAL OFFENDER UNDER MISS. CODE ANN., SECTION 99-19-81 (SUPP. 1992)?
Johnston argues that the application of Miss. Code Ann. § 99-19-81 (Supp. 1992) was error because at the time of Edwards' murder in 1976, the statute was not yet in effect; therefore, application of the statute constituted an ex post facto law in violation of the United States Constitution, Article I, § X, and the Mississippi Constitution, Article 3, § 16.
Both the federal and our state constitutions protect persons from ex post facto laws. Jackson v. State, 551 So.2d 132, 140 (Miss. 1989). One convicted should be sentenced pursuant to the statute existing on the date of his offense to avoid an ex post facto problem. Allen v. State, 440 So.2d 544, 545 n. 2 (Miss. 1983).
In 1976, when Edwards was murdered, Miss. Code Ann. § 99-19-81 did not exist. The penalty for capital murder in 1976 was found in Miss. Code Ann. § 97-3-21 (Supp. 1975), which read in part as follows: "Every person who shall be convicted of capital murder shall be sentenced by the court to death." This statute was enacted by our legislature in response to Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), which had been widely [mis]interpreted as requiring death penalty statutes to be mandatory in order to withstand constitutional scrutiny.
The United States Supreme Court subsequently decided the cases of Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); Jurek v. Texas, 428 U.S. 262, 96 *95 S.Ct. 2950, 49 L.Ed.2d 929 (1976); Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976); and Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976), which explained that Furman did not intend to abolish jury discretion in death penalty cases, but to guard against arbitrariness and caprice in the imposition of the death penalty. In the wake of these cases, this Court decided Jackson v. State, 337 So.2d 1242 (Miss. 1976), wherein the appellant attacked the constitutionality of § 97-3-21 (Supp. 1975).
As it had been the intent of our legislature to enact a death penalty statute that would meet the constitutional requirements of Furman, this Court construed § 97-3-21 (Supp. 1975) to mean "that every person convicted of capital murder shall be sentenced by the court to death if that be the verdict of the jury after the defendant has been accorded a trial governed by procedures and guidelines designed to prevent the risk that the death penalty would be inflicted in an arbitrary and capricious or freakish manner." Jackson, 337 So.2d at 1251. In other words, the death penalty was construed as permissive rather than mandatory in order to uphold its constitutionality; the alternative to the death penalty was life imprisonment. Jackson, 337 So.2d at 1256. The Jackson opinion also set forth the procedural requirements necessary to prevent constitutional insufficiency, which included a bifurcated trial and weighing of aggravating and mitigating circumstances on the question of sentencing. Id. at 1253-54.
In 1977, the legislature amended § 97-3-21 to comply with the constitutional reading given it in Jackson. The amended statute provided for a sentence of either death or life imprisonment as the penalty for capital murder. Miss. Code Ann. § 97-3-21 (Supp. 1977). At the same time, the legislature enacted § 99-19-101 (Supp. 1977), which replaced the Jackson guidelines for bifurcation and weighing of aggravating and mitigating circumstances at sentencing.
Johnston was tried and sentenced pursuant to the procedural guidelines of § 99-19-101, as amended. This does not present an ex post facto problem because the changes required by Jackson and subsequently codified at § 99-19-101 are procedural and ameliorative. Irving v. Hargett, 518 F. Supp. 1127, 1140 (N.D.Miss. 1981); Jordan v. State, 365 So.2d 1198, 1204 (Miss. 1978); Irving v. State, 361 So.2d 1360, 1368 (Miss. 1978); Bell v. State, 353 So.2d 1141, 1143 (Miss. 1977). See also Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977). The circuit court erred in applying to Johnston our enhancement statute which did not exist at the time his offense was committed. Johnston should have been sentenced pursuant to the statute in effect at the time his offense was committed, § 97-3-21 (Supp. 1975). However, the net effect of post-Furman United States Supreme Court cases which examined capital sentencing procedures [Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); Jurek v. Texas, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); Proffitt v. Florida, 428 U.S. 242 (1976)] and mandatory death penalty statutes [Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976); Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976)], along with the 1977 legislative amendment to § 97-3-21 (Supp. 1975), requires that Johnston be sentenced pursuant to § 97-3-21 (Supp. 1977). There is no ex post facto problem in applying the 1977 amendment to Johnston's 1976 offense because the changes brought about by Jackson are ameliorative and procedural. Irving v. Hargett, 518 F. Supp. 1127, 1140 (N.D.Miss. 1981); Jordan v. State, 365 So.2d 1198, 1204 (Miss. 1978); Irving v. State, 361 So.2d 1360, 1368 (Miss. 1978); Bell v. State, 353 So.2d 1141, 1143 (Miss. 1977).
The jury has already decided against the death penalty for Johnston; his only alternative pursuant to § 97-3-21 (Supp. 1977) is life imprisonment. However, his life sentence may not be qualified by the preclusion of parole pursuant to our enhancement statute for habitual offenders *96 as this statute was not in existence at the time Johnston committed his offense. Accordingly, we remand to the Circuit Court of Sunflower County for imposition of sentence consistent with this opinion.
CONVICTION OF CAPITAL MURDER AFFIRMED; SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT THE POSSIBILITY OF PAROLE IS REVERSED AND THIS CAUSE IS REMANDED TO THE CIRCUIT COURT OF SUNFLOWER COUNTY FOR RESENTENCING.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and PITTMAN, BANKS, McRAE, ROBERTS and SMITH, JJ., concur.
HAWKINS, C.J., specially concurs with separate written opinion joined by PITTMAN, BANKS, ROBERTS and SMITH, JJ.
HAWKINS, Chief Justice, specially concurring:
I concur in affirming, and in the refusal of the circuit judge to permit inquiry during cross-examination into specific instances of criminal conduct of Tracie Ferretti, but on the ground that she had not been convicted of any such offense. A conviction of robbery would, in my view, affect a witness's credibility for truthfulness.
PITTMAN, BANKS, ROBERTS and SMITH, JJ., join this Opinion.