IN THE SUPREME COURT OF MISSISSIPPI

NO. 2010-CT-01004-SCT

*STEVE ANTONIO ANTHONY*

*v.*

*STATE OF MISSISSIPPI*

## ON WRIT OF CERTIORARI

DATE OF JUDGMENT:                06/17/2010
TRIAL JUDGE:                     HON. LESTER F. WILLIAMSON, JR.
COURT FROM WHICH APPEALED:       LAUDERDALE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:          STEVE ANTONIO ANTHONY (PRO SE)
ATTORNEYS FOR APPELLEE:          OFFICE OF THE ATTORNEY GENERAL
                                 BY: STEPHANIE BRELAND WOOD
                                     SCOTT STUART
DISTRICT ATTORNEY:               E.J. (BILBO) MITCHELL
NATURE OF THE CASE:              CRIMINAL - FELONY
DISPOSITION:                     REVERSED AND REMANDED - 01/17/2013
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1.     The Lauderdale County Circuit Court convicted Steve Antonio Anthony of the sale

of cocaine. He appealed his conviction, arguing that: (1) the circuit court erred by excluding

evidence on cross-examination of the prior felony charges of the State's confidential

informant; (2) the circuit court erred in denying two peremptory challenges raised by the

defense; and (3) the jury's verdict is against the overwhelming weight of the evidence. The

Court of Appeals affirmed the conviction. Anthony petitioned for certiorari with this Court,

raising the same three issues. Finding that the trial court erred by limiting the cross-

examination of the confidential informant (CI), we reverse Anthony's conviction and sentence and remand this case for a new trial.

**FACTS**

¶2.     This Court adopts the statement of facts as provided in the Court of Appeals opinion as follows:

> On December 4, 2009, Anthony was arrested for selling approximately 3.06 grams of cocaine to Arnold Brown, a confidential informant. The drug sale between Anthony and Brown took place on June 29, 2007.
>
> Prior to the drug buy, Brown approached Agent Christopher Scott with the Meridian Police Department and the East Mississippi Task Force about working with the task force as a CI. Brown contacted an individual known as "Pee Wee" who had cocaine he was willing to sell. Agent Scott began the operation to buy drugs through Brown from Pee Wee based on Brown's information. Brown called Pee Wee on the orders of Agent Scott and set up a meeting place for the drug buy. Pee Wee agreed to meet Brown on 16th Avenue and 16th Street in Meridian, Mississippi. Agent Scott testified that he did not record the conversation, but the phone call was made from their briefing location. At the trial, Brown testified that the man he knew as Pee Wee was Anthony.
>
> Before the CI went to the drug-buy location, the task force searched Brown thoroughly to make sure he did not have any weapons or contraband on him. Brown was then issued money from the official task-force fund. The department made copies of the serial numbers of each bill used in the buy. The task force wired Brown with an audio and video device, and he was wired with a transmitter so the surveillance agents could hear Brown during the buy. Brown's vehicle was searched in its entirety to make sure that no drugs, contraband, or weapons of any type were present in his vehicle.
>
> After Brown was thoroughly searched and wired, Brown gave the agents the specific route that he was going to take to the buy. Agent Scott testified that the agents tried to do a physical surveillance without being too close in proximity to the buy in order to ensure that Brown's cover was not blown. Agent Scott further testified that Brown did not make any stops between the pre-buy meeting and the buy location. Brown testified that Anthony told him he had some "soft," which is powder cocaine. Brown asked

Anthony for the price of a gram of cocaine. Anthony told Brown a gram of cocaine was $100.

When Brown and Anthony were at the designated place for the buy, Brown testified that Anthony got in Brown's car in order to make the exchange. During the exchange, Anthony got out of the vehicle before the close of the buy. Brown then followed Anthony out of the car and approached Anthony about buying some pills in order to get Anthony on video. After the buy, Brown immediately met with the agents who confiscated the cocaine that Brown had bought from Anthony. At the post-buy debriefing, the agents again searched Brown and his car. The agents also took Brown's statement. The Mississippi Crime Lab determined that substance sold to Brown was 3.06 grams of cocaine.

The jury convicted Anthony on June 2, 2010, for sale of cocaine. Anthony was sentenced as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev. 2007). The circuit court sentenced Anthony to sixty years in the custody of the Mississippi Department of Corrections without eligibility for probation or parole. Anthony was additionally ordered to pay a $5,000 fine.

*Anthony v. State*, ____ So. 3d ___ , 2012 WL 266860, **1-2 (Miss. Ct. App. Jan. 31, 2012).

¶3. During the trial, Anthony sought to cross-examine Brown regarding: (1) a prior conviction from 1993, (2) an arrest on February 26, 2007, for two counts of sale of a controlled substance and one count of contempt of child support, and (3) an arrest on April 17, 2007, for one count of possession of a controlled substance and one count of abuse/neglect/exploitation of a vulnerable adult. The trial court allowed cross-examination regarding the two counts of sale of a controlled substance for which Brown was arrested on February 26, 2007, based on the finding that Brown was "working off" these charges as a confidential informant. The trial court, however, refused to allow cross-examination on the remaining charges and the 1993 conviction.

3

¶4. The Court of Appeals upheld the trial court's ruling. The Court of Appeals found that at the time of trial, Brown's 1993 conviction was seventeen years old and was subject to the time limits of Mississippi Rule of Evidence 609(b). The Court of Appeals also found that, because Anthony had failed to show the trial court that Brown had been convicted of the remaining charges, evidence of Brown's arrests was inadmissible under Rule 609.

## DISCUSSION

¶5. "Limitations on cross-examination are reviewed for abuse of discretion." *Jefferson v. State*, 818 So. 2d 1099, 1109 (Miss. 2002). We will affirm the trial court's exercise of discretion unless the ruling resulted in prejudice to the accused. *Clark v. State*, 40 So. 3d 531, 542 (Miss. 2010).

¶6. Mississippi allows wide-open cross-examination of any matter that is relevant, including the possible interest, bias, or prejudice of the witness. *Meeks v. State*, 604 So. 2d 748, 755 (Miss. 1992). "For the purpose of attacking the credibility of a witness, evidence of bias, prejudice, or interest of the witness for or against any party to the case is admissible." M.R.E. 616. This includes interrogating the witness's belief or perception as to whether the State could extend leniency for pending charges. *Foster v. State*, 508 So. 2d 1111, 1114 - 15 (Miss. 1987), *overruled on other grounds by* *Powell v. State*, 806 So. 2d 1069 (Miss. 2001). "Not only is this right secured by our rules of evidence . . . it is a function of the confrontation clauses of federal and state constitutions." *Caston v. State*, 823 So. 2d 473, 491 (Miss. 2002) (quoting *Suan v. State*, 511 So. 2d 144, 148 (Miss. 1987)).

¶7. Here, as Judge Russell found in her dissent, the favorable treatment Brown had received on his prior charges in exchange for his testimony was a material point that affected

4

Brown's credibility as a witness. *Anthony*, 2012 WL 266860, at *8. In limiting Anthony's cross-examination of Brown, the trial court denied Anthony the opportunity to fully challenge Brown's credibility. This error by the trial court is augmented by the fact that the State's case relied heavily on Brown's testimony. Based on the record before us, the only evidence placing Anthony inside Brown's vehicle is Brown's testimony. The video submitted into evidence shows only Brown handing over something to an unknown person sitting in the vehicle. The video does not reveal the face or even the clothing of the person. Thus, the reliability of Brown's testimony was crucial in this instance. And Anthony's jury should have heard the full extent of the deals between Brown and the State.

**CONCLUSION**

¶8.  For these reasons, we find that the trial court's error in limiting Anthony's cross-examination of Brown constituted reversible error. Accordingly, we reverse the judgments of the Court of Appeals and the Lauderdale County Circuit Court and remand the case to the trial court for a new trial consistent with this opinion.

¶9.  **REVERSED AND REMANDED.**

**WALLER, C.J., KITCHENS, CHANDLER AND KING, JJ., CONCUR. LAMAR, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON AND RANDOLPH, P.JJ., AND COLEMAN, J.**

**LAMAR, JUSTICE, DISSENTING:**

¶10.  I disagree with the majority's conclusion that the circuit court erred in limiting Anthony's cross-examination of Brown.[1]  Therefore, I respectfully dissent.

---

[1] I note that the majority states that Anthony raised the same three issues in his petition for writ of certiorari before this Court that he raised before the Court of Appeals. (Maj. Op.

5

¶11.   This Court reviews a circuit court's limitations on cross-examination for an abuse of discretion,[2] and that discretion "must be exercised within the boundaries of the Mississippi Rules of Evidence."[3]  This Court has explained that "[a]buse of discretion is found when the reviewing court has a 'definite and firm conviction' that the court below committed a clear error of judgment and conclusion it reached upon a weighing of the factors."[4]  Additionally, error may not be based upon a evidentiary ruling "[u]nless a substantial right of the party is affected."[5]  In other words, for the circuit court's evidentiary ruling to constitute reversible error, it must have had the effect of denying the defendant a fundamentally fair trial, resulting in a miscarriage of justice.[6]

¶12.   To be admissible, all evidence must comport with our Rules of Evidence, and no evidence is admissible if it is not relevant or if its probative value is outweighed by its prejudicial effect.[7]  It is true, as the majority notes, that Mississippi allows "wide-open cross-

---

at ¶1).  However, Anthony raises two issues in his petition, only the first of which was raised before the Court of Appeals: (1) that the circuit court improperly limited his cross-examination of Brown and (2) that his right to a speedy trial was violated.  Because Anthony raises the issue of his right to a speedy trial for the first time in  his petition, this claim is procedurally barred and I decline to address it.  *Stockstill v. State*, 854 So. 2d 1017, 1023 (Miss. 2003) (citations omitted).

[2]*Johnston v. State*, 618 So. 2d 90, 93 (Miss. 1993) (citation omitted).

[3]*Id.*

[4]*Withers v. State*, 907 So. 2d 342, 345 (Miss. 2005) (citation omitted).

[5]M.R.E. 103(a).

[6]*Lacy v. State*, 629 So. 2d 591, 594 (Miss. 1993).

[7]M.R.E. 402, 403.

examination so long as the matter is relevant."[8] But cross-examination is not without limits, and our trial courts can and should limit cross-examination into issues that are not relevant, or are otherwise barred by our Rules of Evidence. Indeed, Rule 611(a) expressly recognizes that a judge may limit cross-examination to "(1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment."[9]

¶13. Anthony argues the circuit court erred by limiting his cross-examination of Brown on two issues – Brown's 1993 conviction and his April 2007 arrest. The majority determines that the Court erred in restricting his cross-examination because the "favorable treatment Brown had received on his prior charges in exchange for his testimony was a material point that affected Brown's credibility as a witness."[10] The majority concludes that the circuit court's limitation denied "Anthony the opportunity to fully challenge Brown's credibility."[11] But, while Anthony has a right to confront his accusers, this right is not unlimited, and is "always subject to the trial court's inherent power to limit cross-examination to relevant factual issues."[12]

---

[8] *Johnston*, 618 So. 2d at 93. *See also* M.R.E. 611(b).

[9] M.R.E. 611(a).

[10] Maj. Op. at ¶7.

[11] *Id.*

[12] *Foster v. State*, 508 So. 2d 1111, 1114 (Miss. 1987) (citation omitted) (overruled on other grounds).

¶14. I agree that Anthony had a right to cross-examine Brown about his arrangement to "work off" certain drug charges as a confidential informant. The circuit court specifically questioned Brown, under oath and outside the presence of the jury, about his prior charges, and the court allowed Anthony's attorney to question Brown as well. Then the circuit court ruled:

> Court: [Y]ou may ask about the pill charges that he caught that were part of the deal that was going to be done away with for his cooperation. I mean, that happened and that's relevant, and you may ask about that. As to felonies in years past, you may not ask about that. As to some dismissal of a vulnerable adult charge or abuse of a vulnerable adult charge where he was not convicted, I don't think that's an appropriate matter for cross-examination, you may not ask about that unless you have got some proof that it was directly related to the deal.

¶15. The circuit court determined that Anthony could question Brown regarding the pill charges that were going to be dismissed as part of the deal Brown had made in exchange for his cooperation, but held that the 1993 conviction was so remote in time that it had no bearing on Anthony's case, and that the April 2007 arrest was irrelevant because it was not related to Brown's deal with the drug task force and therefore, not probative of bias. Because Anthony presented no specific facts that would support a finding that Brown's 1993 conviction or April 2007 arrest had any relevance to Brown's arrangement to work as a confidential informant, or to Brown's bias or credibility, I would find that the circuit court properly limited cross-examination on these issues.

¶16. The majority finds that Rule 616 of our Rules of Evidence governs this question because it provides that "evidence of bias, prejudice, or interest of the witness *for or against any party to the case* is admissible" for the "purpose of attacking the credibility of a witness."

8

It is clear to me that Anthony sought to cross-examine Brown on his 1993 conviction and April 2007 arrest not to show that Brown had some bias or prejudice *against Anthony*, but to attack Brown's character for truthfulness by showing Brown had broken the law on several occasions and was not credible. Therefore, I would find Anthony's cross-examination on these two issues was governed by Rules 608 and 609 of our Rules of Evidence, not Rule 616. Rules 608 and 609 of our Rules of Evidence limit admission of past convictions and specific instances of conduct of a witness when offered only to attack the witness's character for truthfulness.

¶17.    Admissibility of evidence related to Brown's 1993 conviction for the purpose of attacking Brown's character for truthfulness is governed by Rule 609:

> (b) **Time Limit.** Evidence of a conviction under this rule is *not admissible* if a period of *more than ten years* has elapsed since the date of the conviction or of the release of the witness from confinement imposed for that conviction, whichever is the later date, *unless* the court determines, in the interest of justice, that the probative value of the conviction substantially outweighs its prejudicial effect. However, evidence of a conviction more than ten years old as calculated herein is *not admissible unless* the proponent gives to the adverse party *sufficient advance written notice* of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.[13]

¶18.    The record does not reveal the crime committed in 1993 or when Brown was released from prison. However, it is undisputed that more than ten years (in fact, approximately seventeen) had passed since the date of the conviction at the time Brown testified. There is no evidence that Brown was released from confinement imposed for the conviction less than ten years before he testified against Anthony, and Anthony does not argue that he was.

---

[13]M.R.E. 609 (emphasis added).

Under Rule 609(b), evidence of the 1993 conviction was admissible only if the court determined that the probative value of the conviction substantially outweighed its prejudicial effect. Furthermore, such evidence is *not admissible* unless Anthony gave sufficient written notice to the State of his intent to introduce evidence of the antiquated conviction.[14]

¶19. The record shows that the circuit court heard argument on admissibility of both instances of prior conduct outside the presence of the jury. The circuit-court judge found, as to the 1993 conviction, that Anthony had not given the sufficient written notice required under Rule 609, that the conviction was so remote that it would have no bearing on the case, and that admission of the evidence would be unfairly prejudicial to the State. The circuit court applied the correct legal analysis, and its ruling was not an abuse of discretion. I would affirm the circuit court on this issue.

¶20. As to the April 2007 arrest, the record is unclear regarding the nature of the crimes, but it appears to be an arrest for abuse of a vulnerable adult. Anthony admits that his counsel's argument and questions were based on a booking report provided to the defense during discovery, and that he does not know exactly what the crimes involved or when they occurred. Anthony does not argue that the April 2007 arrest led to a conviction, and there is no evidence that Brown was convicted of any crimes that he was arrested for in April 2007. Therefore, cross-examination regarding the April 2007 arrest is governed by Rule 608, which addresses cross-examination into a witness's specific instances of conduct, other than conviction of a crime, and provides in pertinent part as follows:

---

[14]M.R.E. 609.

(b) **Specific Instances of Conduct.** Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, *other than conviction of crime as provided in Rule 609*, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness . . . .[15]

This Court has stated clearly that instances of past conduct offered solely to attack a witness's credibility "must be such as to reflect upon the witness's character for truthfulness. If the past conduct did not involve lying, deceit, or dishonesty in some manner, it cannot be inquired into on cross-examination. The trial court has no discretionary authority to permit inquiry by cross-examination into conduct not involving truthfulness."[16] Because Anthony offered no evidence that the conduct that gave rise to Brown's April 2007 arrest involved lying, deceit, or dishonesty, I would find the circuit court properly limited cross-examination on this issue.

¶21. Anthony was allowed to question Brown regarding whether he had ever been convicted of a felony and regarding his only drug charges giving rise to his arrangement to work as a confidential informant. At trial, Anthony asked Brown the following questions in the presence of the jury:

Q:     Have you ever been convicted of any felonies?

A:     Yes.

. . .

---

[15]M.R.E. 608 (emphasis added).

[16]***Brent v. State***, 632 So. 2d 936, 944 (Miss. 1994) (citations omitted).

11

Q: Mr. Brown, how is it that you became involved with MBN or the Lauderdale County Task Force?

A: I caught a sale – a pill charge.

Q: When you say you "caught a pill charge," what do you mean?

A: I sold to someone and they – I got caught.

. . .

Q: Okay. But they arrested you?

A: Yes.

Q: Okay.

A: Yes, sir.

Q: What were you told when you got arrested?

A: What was I told?

Q: Were you told, hey you can work this charge off, we can cut you a deal and let you go free or –

A: No. I went to them and asked them could I help myself.

Q: Why did you want to do that?

A: To keep from going to jail.

Q: And, obviously, you have done it so far?

A: Yes, sir.

Q: Okay. But you also got paid, didn't you?

A: Yes, sir.

¶22. Anthony had an opportunity to, and did, fully question Brown in the presence of the jury regarding his agreement to "work off" his own drug charges by working with the drug

task force. Indeed, Anthony questioned Brown about the specific charges; *i.e.*, the pill charges, that gave rise to Brown's work as a confidential informant. The jury was made aware that Brown had his own reasons to cooperate with the police – they heard Brown testify that he previously had been convicted of a felony, that he was working with the drug task force to avoid going to jail, and that he was paid to be a confidential informant. Additionally, the record shows that Christopher Scott, the police officer who arranged for Brown to work as a confidential informant, also testified that the pill charges against Brown were dropped in exchange for Brown's work with the drug task force, and that Brown was paid for his work. In fact, during Anthony's cross-examination, Scott agreed that working as a confidential informant was "like a get-out-of-jail-free card" and that Brown had an "ulterior motive" to testify so that his drug charges would "go away."

¶23. Any additional testimony that Brown was convicted of an unrelated crime in 1993 or arrested for some uncertain crime in April 2007 would be cumulative on the issues of Brown's credibility and/or motivation to testify against Anthony. Even if the circuit court abused its discretion by limiting Anthony's cross-examination on these two issues, which I do not believe that it did, I cannot agree that the limitation affected Anthony's substantial rights, denied him a fundamentally fair trial, or resulted in a miscarriage of justice. Therefore, I would find that any error on the part of the circuit court in limiting Anthony's cross-examination was harmless error, at worst.

¶24. For the foregoing reasons, I would affirm the circuit court's decision to limit Anthony's cross-examination of Brown, and would affirm Anthony's conviction and sentence.

13

**DICKINSON AND RANDOLPH, P.JJ., AND COLEMAN, J., JOIN THIS OPINION.**