# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-01010-COA

**TROY LEE MASTERS**                                       **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                   **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/02/2018 |
| TRIAL JUDGE: | HON. JOHN KELLY LUTHER |
| COURT FROM WHICH APPEALED: | UNION COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALICIA MARIE AINSWORTH |
| DISTRICT ATTORNEY: | BENJAMIN F. CREEKMORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED IN PART, REVERSED IN PART AND REMANDED FOR RE-SENTENCING ON COUNTS I AND II; REVERSED AND RENDERED ON COUNTS III AND IV - 11/19/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE J. WILSON, P.J., WESTBROOKS AND LAWRENCE, JJ.

### WESTBROOKS, J., FOR THE COURT:

¶1. Troy Lee Masters was charged and convicted of three counts of sexual battery and one count of touching a child for lustful purposes in the Circuit Court of Union County. Masters was sentenced to 40 years in the custody of the Mississippi Department of Corrections (MDOC) on Count I, with 16 years suspended and 24 years to serve; to serve 15 years on Count II; to serve 24 years on Count III; and to serve 24 years on Count IV. The trial court set each of Masters's sentences to run concurrently and placed Masters on five years' post-

release supervision. Masters filed a motion for judgment notwithstanding the verdict (JNOV) or, alternatively, for a new trial, which the trial court denied. Aggrieved, Masters appeals. After review of the record, we affirm the judgment on the convictions of the charges in Counts I and II, but we reverse and remand for re-sentencing on these counts; further, we reverse and render judgment on the convictions of the charges in Counts III and IV.

## FACTS AND PROCEDURAL HISTORY

¶2. In the 1980s, Troy Lee Masters and his wife adopted Cara and her brother, Adam,[1] when Cara was five years old. The Masters family lived in a trailer home in Union County, Mississippi. In 2012, Cara began working as an ER housekeeper at Baptist Memorial Hospital in New Albany, Mississippi. Cara did not drive, so Masters would drop her off and pick her up from work. While working at Baptist Memorial Hospital, Cara became friends with head-nurse Cindy Adkins. Adkins helped Cara advance from working as a part-time employee to working as a full-time employee, which entitled her to benefits; took her grocery shopping; and helped organize her finances and obtain housing. Adkins noticed that Cara would become especially anxious when it was time for Masters to pick Cara up from work, so Adkins began staying one hour longer on her shift so she could give Cara rides home from work. Adkins would then stay on the phone with Cara from the time she dropped Cara off until Cara would fall asleep. Cara eventually moved in with Adkins for about 10 to 12 months before finally moving into her own place.

¶3. At some point between October and November 2016, Cara disclosed to Adkins that

---

[1] We have chosen to use the pseudonyms "Cara" and "Adam" to protect the identities of these individuals. The incidents first occurred when the individuals were minors.

Masters had sexually abused her, beginning when she was a minor and continuing into adulthood. On November 15, 2016, Adkins took Cara to the Union County Sheriff's Office to file a report regarding Masters's abuse of Cara.

¶4. Investigator Baron Baker took Cara's statement. Baker had Cara return on November 30, 2016, to give a more detailed report. In these reports, Cara alleged the abuse began at age 13 and continued until only a few months prior to her making the report. Baker went to Baptist Memorial Hospital on December 1 and 5, 2016, to record telephone conversations between Cara and Masters. On a call made on December 5, Masters asked Cara about her counseling sessions she had attended, and Cara expressed that she was nervous during them because the doctors were asking her about her past. Masters then replied, "Well, tell them about it. Don't tell them about me, but tell them about what happened to you. Tell them your aunt sexually abused you." Masters went on to ask, "Did you tell your girls that you're living with about what happened between me and you? Is that why they're not wanting you to be around me?" Cara returned to the sheriff's office on December 12, 2016, to give a third, even more detailed statement to Baker.

¶5. On December 13, 2016, the police stopped Masters while he was driving a car and took him to the sheriff's office. Baker advised Masters of his *Miranda* rights,[2] and Masters signed a waiver of those rights. Baker played the recording of the December 5, 2016 telephone conversation for Masters. Masters acknowledged that the recording was a conversation between Cara and himself. Baker asked Masters if Masters wanted to make a

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

statement. Masters responded with the statement, "I have seen [Cara] naked before. I've done some things in the past that I know I shouldn't have done. I guess I need a lawyer." Baker then stopped questioning Master and later that day charged Masters with four counts of sexual abuse.

¶6. The grand jury indicted Masters on March 30, 2017. Count I alleged Masters committed sexual battery of a child under 14 years of age, pursuant to Mississippi Code Annotated section "97-3-95 (1)(d)," between January 1, 1992, and December 31, 1992, by inserting his finger into Cara's vagina.[3] The indictment stated Count I imposed a minimum sentence of 20 years and a maximum sentence of life in prison.

¶7. Count II alleged Masters committed the crime of touching a child for lustful purposes, under Mississippi Code Annotated section 97-5-23 (Supp. 1991), between the same dates as Count I, by fondling Cara's breasts and vagina. The indictment stated Count II's maximum sentence for imprisonment was 15 years. Counts III and IV alleged that on two separate occasions between January 17, 1993, and January 17, 1994, Masters committed sexual battery of a child between 14 and16 years of age, under Mississippi Code Annotated section

---

[3] The applicable statutory provision at the time of the alleged offense appears in the 1992 cumulative supplement to the Mississippi Code of 1972 Annotated. Miss. Code Ann. § 97-3-95(c) (Supp. 1992). The same law applied in 1991. *Id*. The substantive statutory language used in the indictment apparently derives from the current version of the Code section, Miss. Code Ann. § 97-3-95(1)(d) (Rev. 2014), which first appeared in the 1998 supplement. Miss. Code Ann. § 97-3-95(1)(d) (Supp. 1998). The language in the indictment includes an additional element in the 1998 and 2014 versions that did not apply to offenses committed in 1991 or 1992, namely that the person engaging in sexual penetration be "twenty-four (24) or more months older than the child." *Id*. Masters does not raise any challenge to the proof of this issue on appeal, and we therefore need not address it. M.R.A.P. 28(a).

"97-3-95(c)," by inserting his penis into Cara's mouth when Cara was 15 years old.[4]

¶8.   At the pre-trial conference, the prosecution moved for the allowance of Rule 404(b) evidence. The prosecution sought to introduce evidence of touching and other sexual activity between Masters and Cara that occurred after Cara reached adulthood. The trial court found that the potential probative value of Cara's testimony of her continued abuse during adulthood outweighed the potential prejudice to Masters; that if the defense wanted to limit such testimony, it would have to make contemporaneous objections; and, that if the defense wanted to give a limiting jury instruction, it would have to renew its request for it at the time the jury would be given instructions.

¶9.   At trial, Cara testified that the sexual abuse began when she was 13 years old. When Cara had her first menstrual cycle, Masters said, "You ain't my baby girl anymore." Cara testified that Masters would come into her room in the early morning and "finger" her. Cara also testified that Masters would rub lotion on her from her breasts to her vagina, and that he would make her rub lotion onto his penis. Cara stated that on two occasions Masters made her put her mouth on his penis. Cara testified that Masters taught her how to masturbate when she was 15. As explanation, Masters told Cara that all fathers and daughters have such a relationship; that he was teaching her how to please a man; and that she was not to tell anyone about it. Cara testified that these acts occurred almost every day from age 13 until 37.

---

[4] It appears the substantive statutory language in the indictment derives from the current version of the code section, Miss. Code Ann. § 97-3-95 (Rev. 2014), which first appeared in the 1998 supplement. Miss. Code Ann. § 97-3-95(1)(c) (Supp. 1998). The applicable statutes appear in the 1992 and 1993 supplements as discussed below.

¶10.   Cara testified that Masters continued to make sexual advances to her when she was an adult. When Masters would drive Cara to and from work, he would say things like, "You need a hysterectomy, you need a penis in you," and that she had nice breasts. Cara testified that she was hospitalized for being suicidal, spending twelve days in a behavioral health facility, and it was at this time that the abuse stopped because she was not allowed any visitors.

¶11.   Although he made several hearsay objections to the testimonies of Baker, Adkins, and Cara, Masters never specifically objected to the testimony of other bad acts or requested such testimony be limited. When the parties were reviewing the jury instructions, the trial judge asked if Masters wanted a limiting instruction regarding other bad acts, and he declined.

¶12.   The jury found Masters guilty on all four counts. For Count I, the trial court sentenced Masters to 40 years in the MDOC's custody, with 16 years suspended and 24 years to serve. For Count II, the trial court sentenced Masters to 15 years in prison. For Count III, the trial court sentenced Masters to 24 years in prison. For Count IV, the trial court sentenced Masters to 24 years in prison. All four sentences were set to run concurrently, leaving a total sentence of 40 years in the MDOC's custody, with 16 years suspended and 24 years to serve. Masters filed a motion for JNOV or alternatively a new trial, which the trial court denied. Aggrieved, Masters appeals.

## DISCUSSION

I.   **Whether the trial court erred in allowing other-bad-acts evidence of Masters's sexual activity with Cara after she became an adult.**

¶13.   Masters argues that admission of the other-bad-acts evidence (his abuse of Cara as an

6

adult) was an abuse of discretion because it was not probative of his abuse of Cara as a child and that it was not necessary evidence for the State to prove its case and therefore was prejudicial, violating Mississippi Rule of Evidence 403. "Admissibility of evidence is reviewed for abuse of discretion." *Jones v. State*, 154 So. 3d 872, 878 (¶18) (Miss. 2014).

¶14.    In *Shoemaker v. State*, 256 So. 3d 604, 613-14 (¶36) (Miss. Ct. App. 2018), this Court stated:

> Rule 404(b) prohibits the use of prior-bad-acts evidence to prove a person's character to show that he acted in conformity therewith. However, Rule 404(b) permits the use of such evidence to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Before admitting prior-bad-acts evidence, a trial judge should filter the evidence through Mississippi Rule of Evidence 403 and determine whether the evidence's probative value outweighs its prejudicial effect to the defendant. Where the evidence's probative value outweighs its prejudice, the trial judge may admit the evidence. In the context of child-sexual-abuse cases, even evidence of remote past sexual-abuse allegations may be admitted for a proper purpose under Rule 404(b), especially when coupled with an appropriate limiting instruction to the jury.

(Citations omitted).

¶15.    Here, the State asserts that the testimony regarding the abuse Cara received as an adult was necessary to tell a complete story and that whatever prejudice Masters suffered was outweighed by its probative value. We agree. Here, Cara's testimony was relevant to tell the story of what lead to her disclosure of the abuse. The Mississippi Supreme Court "has held that even though it may reveal other crimes, evidence or testimony may be given in order to tell a rational and coherent story of what happened and where it is substantially necessary to present a complete story." *Flowers v. State*, 773 So. 2d 309, 319 (¶28) (Miss. 2000). The Supreme Court has also held that "evidence of another crime is also admissible

7

if it sheds light upon the motive or if it forms a part of a chain of facts intimately connected so that in order to interpret its general parts, the whole must be heard." *Bruce v. State*, 35 So. 3d 1236, 1239 (¶12) (Miss. Ct. App. 2010) (internal quotation mark omitted).

¶16.    "The weighing and balancing task required by Rule 403 asks only that a judge rely on his/her own sound judgment." *O'Connor v. State*, 120 So. 3d 390, 398 (¶20) (Miss. 2013) (quoting *Jones v. State*, 920 So. 2d 465, 476 (¶33) (Miss. 2006)).   So, "if a trial court determines that the prejudicial effect of evidence substantially outweighs its probative value, *it is not obligated to exclude the evidence*, but may do so at its discretion."  *Id*. (emphasis added) (quoting *Ross v. State* 954 So. 2d 968, 993 (¶44) (Miss. 2007)).   Therefore, we find no error in the trial court's admission of Cara's testimony.

¶17.    Masters also maintains that the trial court erred in its failure to cite any permitted use for which the evidence was admitted and did not give an appropriate limiting instruction. This assignment of error is misplaced because a "trial court's failure to identify the specific applicable exception(s) under Rule 404(b) does not require reversal." *Green v. State*, 89 So. 3d 543, 551 (¶17) (Miss. 2012).   Also, under Mississippi caselaw, Masters had the burden of requesting a limiting instruction. *Brown v. State*, 890 So. 2d 901, 913 (¶36) (Miss. 2004). The record reflects that Masters declined a limiting instruction during the instructions conference.   Therefore, we find that this issue lacks merit.

### II.    Whether Masters's sentences for Counts I and II are illegal.

¶18.    Masters argues that the sentences he received in Counts I and II are beyond the maximum sentences for the offenses at the time the offenses were committed and the State

agrees.

¶19. In *Cozart v. State*, 226 So. 3d 574, 576-77 (¶9) (Miss. 2017), the Mississippi Supreme

Court held:

> It is well-established that the imposition of a sentence is within the discretion of the trial court, and this Court will not review the sentence, if it is within the limits prescribed by statute. However, the issue of whether the application of a statute constitutes an ex post facto violation is a question of law. Where questions of law are raised the applicable standard of review is de novo.

(Citations and internal quotation marks omitted).

¶20. Masters was sentenced to 40 years in the MDOC's custody, with 16 years suspended

and 24 years to serve, for sexual battery under Count I. However, at the time of the offense,

between January 1, 1992, and December 31, 1992, the maximum sentence for sexual battery

was 30 years under Mississippi Code Annotated section 97-3-101 (Supp. 1992):

> Every person who shall be convicted of sexual battery shall be imprisoned in the State Penitentiary for a period of not more than thirty (30) years; provided, however, that any person convicted of a second or subsequent offense under this act shall be imprisoned in the penitentiary for not less than five (5) years nor more than thirty (30) years.

¶21. Masters was sentenced to serve 15 years for his conviction of fondling of a child in

Count II; however, at the time of his offense, the maximum sentence for fondling of a child

was 10 years. In 1991 and 1992, the applicable law read:

> Any person above the age of eighteen (18) years, who, for the purpose of gratifying his or her lust, or indulging his or her depraved licentious sexual desires, shall handle, touch or rub with hands or any part of his or her body or any member thereof, any child under the age of fourteen (14) years, with or without the child's consent, shall be guilty of a high crime and, upon conviction thereof, shall be fined in a sum not less than One Hundred Dollars ($100.00) nor more than One Thousand Dollars ($1,000.00), or be committed to the custody of the State Department of Corrections *not less than one (1)*

9

*year nor more than ten (10) years*, or be punished by both such fine and imprisonment, at the discretion of the court.

Miss. Code Ann. § 97-5-23 (Supp. 1992) (emphasis added).

¶22. "Both the federal and our state constitutions protect persons from *ex post facto* laws, and provide that those convicted should be sentenced pursuant to the statute existing on the date of his offense to avoid an *ex post facto* problem." *Cozart*, 226 So. 3d at 578 (¶14) (internal quotation marks omitted) (quoting *Johnston v. State*, 618 So. 2d 90, 94 (Miss. 1993)). "It is fundamental that the statute in effect at the time an offense is committed is the one that must control the prosecution of the offense." *Flowers v. State*, 35 So. 3d 516, 518 (¶5) (Miss. 2010).

¶23. The proper remedy for imposition of an illegal sentence is to remand for re-sentencing in accordance with the applicable statute. *See Foreman v. State*, 51 So. 3d 957, 962 (¶12) (Miss. 2011); *Jefferson v. State*, 958 So. 2d 1276, 1281 (¶16) (Miss. Ct. App. 2007). Therefore, the matter should be remanded for re-sentencing on Counts I and II under the applicable version of the statutes in effect at the time of the offenses.

### III.    Whether Counts III and IV of the indictment are fatally defective.

¶24. Masters argues that the indictment was fatally defective for Counts III and IV because it failed to charge a crime cognizable under Mississippi law, and the State agrees. "Whether an indictment is fatally defective is a question of law that we review de novo." *Bryant v. State*, 238 So. 3d 1213, 1216 (¶7) (Miss. Ct. App. 2018).

¶25. Counts III and IV allege that Masters committed sexual battery by inserting his penis into Cara's mouth "between January 17, 1993 and January 17, 1994" when Cara was 15 years

old. Mississippi Code Annotated section 97-3-95(c) (Supp. 1992) provided for sexual battery for sexual penetration with "[a] child under the age of fourteen (14) years." Cara was 15 years old during the relevant period in the indictment.

¶26. Effective July 1, 1993, the amended statue contained subsection (2), which provided that "[a] person is guilty of sexual battery if he or she engages in sexual penetration with a child of fourteen (14) but less than eighteen (18) years if the person is in a position of trust or authority over the child . . . ." Miss. Code Ann. § 97-3-95 (Supp. 1993).

¶27. Masters argues that his indictment is fatally defective even after the amendment because it failed to allege the essential element that he was in a position of power or authority over Cara. We agree.[5] "[A]n indictment must contain the essential elements of the crime charged." *Warren v. State*, 187 So. 3d 616, 621 (¶10) (Miss. 2016). As such, Counts III and IV are fatally defective because the indictment failed to allege the essential elements of the crime under the statute in effect at the time.

¶28. This Court is often faced with the difficult task of applying the law as written, even when personal opinion would dictate otherwise. Every prosecution and sentence must be conducted in accordance with the authority given to us by the Mississippi Legislature. The trial court sentenced Masters under the wrong version of the statutes, and we have no choice but to remand this case for re-sentencing under the proper statutes for Counts I and II. As to Counts III and IV, the State concedes in its brief that the indictment was fatally defective. Our review leads to the same conclusion. As to Counts III and IV, we must reverse and

---

[5] Thus, we need not consider whether the jury found guilt based solely on acts done between July 1, 1993, and January 17, 1994, when the amended Code section applied.

11

render because the indictment failed to charge a crime cognizable under the law as written in Mississippi at that time.

¶29. **AFFIRMED IN PART, REVERSED IN PART AND REMANDED FOR RE-SENTENCING ON COUNTS I AND II; REVERSED AND RENDERED ON COUNTS III AND IV.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR. J. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**